## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DANIEL A. HORWITZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DISTRICT COURT FOR THE | ) | |
| MIDDLE DISTRICT OF TENNESSEE; | ) | Case No. _____ |
| | ) | |
| HON. WILLIAM L. CAMPBELL, JR., | ) | |
|   Chief District Judge, in his | ) | **COMPLAINT** |
|   official capacity; | ) | |
| | ) | |
| HON. ALETA A. TRAUGER, | ) | |
|   District Judge, in her | ) | |
|   official capacity; | ) | |
| | ) | |
| HON. WAVERLY D. CRENSHAW, JR., | ) | |
|   District Judge, in his | ) | |
|   official capacity; | ) | |
| | ) | |
| HON. ELI RICHARDSON, | ) | |
|   District Judge, in his | ) | |
|   official capacity; | ) | |
| | ) | |
| *Defendants.* | ) | |

## INTRODUCTION

1.      Public-interest litigation requires public discussion.  But Middle District of Tennessee Local Rule 83.04 unduly restricts attorneys from discussing their litigation.

2.      Daniel Horwitz is a local attorney who sues the government and its contractors when they violate people's constitutional rights.  As part of his advocacy, Mr. Horwitz talks about his public-interest cases with reporters and on social media.  Or at least he did.  For the past two years, one of this Court's local rules has forced him to stop speaking about his civil-rights cases against a government contractor.

3.      In July 2022, this Court applied Local Rule 83.04 to impose a gag order on Mr. Horwitz's public commentary about CoreCivic, a private prison contractor for the State of Tennessee.  To do so, this Court invoked Rule 83.04(a)(2)'s presumption that certain speech is prejudicial, without any evidence that Mr. Horwitz's comments undermined this Court's ability to hold a fair trial.  The Court ordered Mr. Horwitz to stop talking about his case against CoreCivic and threatened him with contempt.  He's heeded that warning ever since, at great cost to his constitutional rights.

4.      Rule 83.04(a)(2) creates a presumption that anything an attorney says publicly about a broad range of things—like the evidence in the case or character of the parties—is likely to impact the proceedings.  An attorney who wants to tell the public about his case must overcome that presumption and prove his speech is *not* prejudicial.  But such presumptions against open dialogue are antithetical to the First Amendment.

5.      Attorneys, like everyone else, have a First Amendment right to speak publicly about non-privileged matters.  Although a court's interest in ensuring a fair trial may

1

sometimes justify tailored limitations on attorney speech, a court can restrict an attorney's public speech only when there is actual evidence that speech will materially impact an impending trial. The further away a trial is, the more difficult it is to carry that burden. An opposing party's general complaints of negative media coverage are not enough. And even when some statements do meet the high bar of being prejudicial, the court must limit any restrictions on an attorney's speech to the least burdensome means available. Gag orders like the one imposed on Mr. Horwitz must be a last resort.

6. Mr. Horwitz has tried in five different cases to resolve the constitutionality of Rule 83.04. But for reasons outside his control, he has been unable to litigate the issue to a final ruling on the merits. So, he brings this case against the Court only as a last resort because it has become apparent that, amidst his constant but short-lived lawsuits against the same government contractor, a standalone lawsuit is the only way to vindicate his right to speak. Mr. Horwitz also sues this Court's district judges in their official capacity only because, as the officials responsible for making and enforcing the challenged rule, they are necessary and appropriate parties for the injunctive relief Mr. Horwitz seeks.

7. Rule 83.04 violates the First Amendment both facially and as applied to the things Mr. Horwitz would like to say about his cases against CoreCivic. Mr. Horwitz respectfully asks that this Court declare that Rule 83.04(a)(2)'s presumption of prejudice and burden-shifting provision are unconstitutional and enjoin the rule's enforcement except when the party wishing to restrict his speech provides actual evidence that his statements are substantially likely to materially prejudice an impending trial. Alternatively, he asks this Court to declare that Rule 83.04(a)(2) is void for vagueness.

## JURISDICTION & VENUE

8.      Plaintiff brings this civil-rights lawsuit pursuant to 28 U.S.C. §§ 1331, 1343, 1345, 2201, and 2202, seeking a declaratory judgment and injunction against violations of rights, privileges, or immunities secured by the United States Constitution.

9.      Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391.

## PARTIES

10.     Daniel A. Horwitz is an adult citizen of the United States who resides in Nashville, Tennessee.  Mr. Horwitz is a civil-rights lawyer.  He brings cases in the public's interest against the government and its officers, employees, and contractors.  He frequently litigates those cases in the Middle District of Tennessee and is consequently bound, almost perpetually, by the Middle District's local rules governing attorney speech.

11.     The U.S. District Court for the Middle District of Tennessee is an Article III trial court created by Congress.  5 Stat. 313 (1838).  The Middle District is authorized by statute and federal rule to adopt and enforce local rules that govern the conduct of attorneys appearing before the court.  28 U.S.C. § 2071; Fed. R. Civ. P. 83; *see also* L.R. 83.08.  Pursuant to that rulemaking power, the Middle District adopted Local Rule 83.04, which unduly restricts the out-of-court speech of attorneys in the district and is the subject of this lawsuit.

12.     The Honorable William L. Campbell, Jr., is the chief district judge for the Middle District.  As chief district judge, Judge Campbell has administrative responsibility for the Middle District of Tennessee.  Judge Campbell is sued in his official capacity only because, as a district judge, he is authorized to adopt and enforce local rules, including Local Rule 83.04,

3

which unduly restricts the out-of-court speech of attorneys in the district and is the subject of this lawsuit.

13.     The Honorable Aleta A. Trauger is a district judge in the Middle District of Tennessee.  Judge Trauger is sued in her official capacity only because, as a district judge, she is authorized to adopt and enforce local rules, including Local Rule 83.04, which unduly restricts the out-of-court speech of attorneys in the district and is the subject of this lawsuit.

14.     The Honorable Waverly D. Crenshaw, Jr., is a district judge in the Middle District of Tennessee.  Judge Crenshaw is sued in his official capacity only because, as a district judge, he is authorized to adopt and enforce local rules, including Local Rule 83.04, which unduly restricts the out-of-court speech of attorneys in the district and is the subject of this lawsuit.

15.     The Honorable Eli Richardson is a district judge in the Middle District of Tennessee.  Judge Richardson is sued in his official capacity only because, as a district judge, he is authorized to adopt and enforce local rules, including Local Rule 83.04, which unduly restricts the out-of-court speech of attorneys in the district and is the subject of this lawsuit.

## BACKGROUND

16.     Daniel Horwitz is a constitutional lawyer who sues the government and its officials and contractors when they violate people's rights.  He frequently litigates public-interest cases in the Middle District, on issues ranging from free speech to religious liberty to prisoners' rights.

17.     Mr. Horwitz brings these types of cases because he believes they involve important public issues and because he believes that bringing attention to those issues will

help prompt reform. In doing so, Mr. Horwitz has gained significant expertise on the issues in his cases. He'd like to contribute that expertise to the public discourse.

18. As a public-interest attorney, Mr. Horwitz's advocacy is not limited to the courtroom. Mr. Horwitz's ability to explain constitutional violations to the public, and why those issues matter, is an important part of his job. Media attention can lead to meaningful change—both for his clients and for others whose civil rights have been (or will be) impacted in similar ways. Speaking publicly about his cases also vindicates the public's right to know how its government operates and the ways in which the government and its contractors fall short of serving the public interest.

19. To achieve the best outcome for his clients along with lasting structural change, Mr. Horwitz discusses his clients' cases publicly on both traditional and social media platforms. That discussion used to include details about his clients' cases against CoreCivic—but then CoreCivic successfully invoked Rule 83.04 to censor his speech.

### Mr. Horwitz Is a Frequent Litigator in the Middle District

20. Mr. Horwitz has litigated dozens of cases in the Middle District since being admitted to this Court.

21. Many of those cases have been against CoreCivic of Tennessee, LLC, a private prison contractor.

22. Mr. Horwitz has been litigating prisoners'-rights cases against CoreCivic in the Middle District almost continuously since 2020:

     a. *Carmen v. CoreCivic of Tennessee, LLC,* No. 3:20-cv-01105 (Dec. 28, 2020);

     b. *Newby v. CoreCivic of Tennessee, LLC*, No. 3:22-cv-00093 (Feb. 11, 2022);

c. *Taylor v. CoreCivic of Tennessee, LLC,* No. 3:22-cv-00444 (Jun. 13, 2022);

d. *Nored v. CoreCivic of Tennessee, LLC,* No. 3:22-cv-00658 (Aug. 22, 2022);

e. *Tardy v. CoreCivic of Tennessee, LLC,* No. 3:22-cv-00681 (Sept. 2, 2022);

f. *McGhee-Twilley v. CoreCivic of Tennessee, LLC,* No. 3:23-cv-00077 (Jan. 25, 2023);

g. *Burchard v. CoreCivic of Tennessee, LLC,* No. 3:23-cv-00455 (May 8, 2023);

h. *Gordon v. CoreCivic of Tennessee, LLC,* No. 3:23-cv-01195 (Nov. 13, 2023);

i. *Shaw v. CoreCivic of Tennessee, LLC,* No. 3:24-cv-00681 (June 4, 2024).

23.    The above cases do not include additional cases that Mr. Horwitz handled through pre-suit stages, some of which settled without a complaint in this Court. *See, e.g.*, In Re Estate of Aaron Blake Adams, Deceased, Trousdale Chancery Court Case No. 1070.

24.    Mr. Horwitz plans to continue bringing lawsuits against CoreCivic in the Middle District, as experience shows that there will unfortunately be more constitutional violations at CoreCivic's prisons.

25.    Indeed, Mr. Horwitz filed another such lawsuit just last week: *Farrar v. CoreCivic of Tennessee, LLC*, No. 3:24-cv-1140 (Sept. 23, 2024).

**A Government Contractor Invoked Rule 83.04 To Silence Public Discussion on Matters of Public Interest**

26.    One of Mr. Horwitz's first prisoners'-rights cases against CoreCivic, *Newby*, fundamentally changed his ability to discuss his litigation against CoreCivic in the Middle District in a manner that continues to this day.

27.    *Newby* was a lawsuit over the murder of Terry Childress at Trousdale Turner Correctional Center, a prison that CoreCivic operates on behalf of the State of Tennessee.

6

28.     After Mr. Horwitz filed the complaint in *Newby*, things proceeded normally at first—he spoke about the case with local and statewide media outlets, and he posted about the case on social media.

29.     Mr. Horwitz posted more than a dozen times about *Newby* on social media.

30.     He also did interviews with traditional media outlets.

31.     Then, on June 10, 2022, while the case was in discovery, CoreCivic filed a "Motion for Compliance with Local Rule 83.04 and to Strike."

32.     CoreCivic complained that Mr. Horwitz "has provided public commentary regarding Childress and the allegations that underlie this suit" by discussing Childress' time at Trousdale and the chronic understaffing and violence in that prison.

33.     CoreCivic's motion highlighted that Mr. Horwitz participated in a local news story entitled "News4 Investigates: Former Correctional Officer calls for increased staffing and medical care at Trousdale Turner Correctional Center."

34.     The motion also included a litany of screenshots of Mr. Horwitz's tweets about CoreCivic, including many that did not reference the case at all but were just general calls for the State of Tennessee to reform CoreCivic's facilities.

35.     Mr. Horwitz's commentary centered on matters of public importance, like the prison's chronic understaffing and violence, CoreCivic's violations of its government contracts, and its violations of religious liberty.

36.     In addition to invoking Rule 83.04 against Mr. Horwitz's description of his client's case, CoreCivic complained that Mr. Horwitz called for the Department of Justice to

investigate CoreCivic's Tennessee prisons and that he called for the State of Tennessee to either take control of CoreCivic's facilities or cancel the prison's government contracts altogether.

37. CoreCivic asserted that Mr. Horwitz's public discussion of *Newby*, and the conditions in CoreCivic facilities more generally, inherently prejudiced CoreCivic's right to a fair trial.

38. Rather than offer any proof of prejudice—something that CoreCivic could not do—CoreCivic merely invoked Rule 83.04, which shifted the burden to Mr. Horwitz to prove a negative: that his speech would not prejudice the company's right to a fair trial.

## Local Rule 83.04

39. Middle District of Tennessee Local Rule 83.04(a)(1) provides that any lawyers (and their coworkers) who investigate or litigate a matter in the Middle District "must not make any extrajudicial statements (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative matter, including especially that will interfere with a fair trial."

40. Subsection 83.04(a)(2) then defines four broad categories of content for which the court presumes that an attorney's public speech "is more likely than not" to materially prejudice a party-opponent. These categories include any comments about:

    a. Evidence regarding the occurrence or transaction involved in the case;

    b. The character, credibility, or criminal record of a party, witness, or prospective witness;

8

c.  The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test; or

d.  Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

41.     Taking the first and fourth categories together, an attorney cannot talk about anything that might be evidence in the case *or* anything that would *not* be admissible as evidence in the case.

42.     If an attorney speaks publicly about any of these broad categories of content, the Middle District forces them to prove their speech will not prejudice their party-opponent's right to a fair trial.

### A Magistrate Judge for the Middle District Imposed a Gag Order on Mr. Horwitz

43.     On July 15, 2022, Magistrate Judge Frensley applied Rule 83.04 to impose a gag order on Mr. Horwitz's public speech about his *Newby* case against CoreCivic.

44.     Magistrate Judge Frensley ruled that Mr. Horwitz's public comments "fit squarely within the prohibition on extrajudicial statements[,]" because he made "assertions regarding [CoreCivic] in general and specific to th[e *Newby*] litigation."

45.     "Trials are meant to occur in the courtroom, not the media," the decision admonished, before criticizing Mr. Horwitz for "actively seeking media attention for his client's case."

46.     Based solely on Rule 83.04's presumption of prejudice—without any evidence whatsoever—the court concluded that "Mr. Horwitz's comments have a substantial likelihood

9

of materially prejudicing an adjudicative proceeding in this manner, especially interfering with a fair trial."

47.     Magistrate Judge Frensley also summarily rejected Mr. Horwitz's First Amendment defense, "despite Mr. Horwitz's assertions that the present case is unlikely to go to trial, and that voir dire can ensure a neutral jury in the event of a trial[.]"

48.     Accordingly, Magistrate Judge Frensley ordered Mr. Horwitz "to refrain from extrajudicial statements regarding this matter and to delete those over which he has control[.]"

49.     Magistrate Judge Frensley also "warn[ed] Mr. Horwitz that his responsibility in this litigation is to be an advocate, not an investigative journalist, and that continuing to seek out media attention for this case would place him at risk of being held in contempt of this Court."

50.     In compliance with the *Newby* gag order, Mr. Horwitz deleted dozens, if not hundreds, of public statements about CoreCivic—spanning years—from his social media accounts, including the following examples:

    a.  A post that said: "This is what happened to Terry Childress. Were the other homicides foreseeable and preventable, too?" with a link to a *Tennessean* article about *Newby*.

    b.  A post about a prisoner's rights case in the Fifth Circuit that said, "What if, instead, you just don't bother to employ enough staff to check, then find the guy

dead a whole lot later after he is already decaying? Asking for CoreCivic's @Trousdale Turner."

c.  A post that said, "First, some context. We represent a mother whose son was murdered at @CoreCivic's Trousdale Murder Correctional Center, Tennessee's motion dangerous and notorious prison. He was one of far too many CoreCivic victims. The case gives us subpoena power."

d.  A post with photos of a handwritten declaration from an inmate along with the following call for information: "Do you or a loved one have personal knowledge of malfeasance at @CoreCivic's @TrousdaleTurner Correctional Center? If so, please feel free to mail me a declaration like this gentleman did."

e.  A post with a highlighted transcript from a deposition in another CoreCivic case that said: "Let's hear from one of the @TNTDOC1's on-site compliance monitors about the staffing problem at @TrousdaleTurner. Is it a secret? No. The facility has literally never had compliant staffing levels. Never. And the TDOC knows it because it documents it."

**Mr. Horwitz Has Tried Diligently Since July 2022 to Vindicate His Right to Speak**

51.  Mr. Horwitz has tried repeatedly to address the constitutionality of Rule 83.04 within his litigation against CoreCivic. But despite his diligence, he has been unable to obtain a final ruling on the issue.

52.  After Magistrate Judge Frensley imposed the *Newby* gag order, Mr. Horwitz filed a motion asking the district judge assigned to the case to review the gag order.

11

53.     While that motion was pending, however, the parties in *Newby* agreed to a settlement well in advance of trial, just as Mr. Horwitz predicted they would.

54.     Along with a stipulation to dismiss *Newby*, Mr. Horwitz also filed a third-party motion on his own behalf asking that the court still resolve his pending challenge to the gag order under the capable-of-repetition-yet-evading-review exception to mootness.

55.     As Mr. Horwitz's motion explained, he is a repeat litigator against CoreCivic in the Middle District and his cases against the prison corporation always settle, making the issue both capable of repetition and likely to evade review.

56.     Nevertheless, this Court denied Mr. Horwitz's motion as moot on December 2, 2022, and dismissed the case.  Magistrate Judge Frensley's interlocutory interpretation of Rule 83.04 was thus never reviewed by a district judge of this Court, despite Mr. Horwitz's attempt to obtain review.

57.     By the time the court dismissed as moot Mr. Horwitz's challenge to the *Newby* gag order, Mr. Horwitz had already been gagged for nearly five months and had already filed the *Tardy* case in the Middle District.

58.     Given how broadly the *Newby* gag order interpreted Rule 83.04, Mr. Horwitz had to apply similar restrictions to his speech about *Tardy*.

59.     So, in *Tardy*, Mr. Horwitz attempted for a second time to vindicate his right to speak about his cases against CoreCivic.

60.     On May 12, 2023, Mr. Horwitz filed a motion to clarify that Rule 83.04 does not prohibit him from making extrajudicial statements about *Tardy*.

12

61. CoreCivic opposed the motion, arguing that Mr. Horwitz's public commentary about the case constitutes "inadmissible opinion testimony."

62. One of CoreCivic's governmental codefendants, Hardeman County, Tennessee, insisted that "[t]here should be **no** extrajudicial statements" about the litigation against the government and its contractor.

63. The parties' dispute over whether Mr. Horwitz could speak publicly about *Tardy* remained pending for over four months, until September 26, 2023, when this Court transferred the case to the Western District of Tennessee.

64. The Western District promptly dismissed Mr. Horwitz's motion as moot because the Western District does not have a rule like Rule 83.04 to prohibit attorneys' extrajudicial speech.

65. The Western District does, however, routinely hold trials without attorneys' public speech prejudicing the proceedings.

66. This Court's order transferring *Tardy* was the second time one of Mr. Horwitz's motions to resolve the constitutionality of Rule 83.04 became moot before this Court could resolve the issue.

67. A few weeks after the *Tardy* transfer order, Mr. Horwitz tried a third time to vindicate his First Amendment rights, this time in *Burchard*. On October 17, 2023, Mr. Horwitz filed a motion to clarify that Rule 83.04 does not prohibit him from making extrajudicial statements about Mr. Burchard's case.

68.     CoreCivic once again opposed Mr. Horwitz's motion and urged this Court to apply Rule 83.04 to prohibit Mr. Horwitz from speaking publicly about his cases against the prison.

69.     The motion in *Burchard* was still pending when Mr. Horwitz filed *Gordon*, so he tried a fourth time to vindicate his rights.

70.     Specifically, on January 3, 2024, Mr. Horwitz filed another motion to clarify his rights under Rule 83.04, this time asking the court to determine that the rule did not prohibit him from speaking publicly about Ms. Gordon's case against CoreCivic.

71.     CoreCivic opposed the motion again, as it has each time Mr. Horwitz has sought a ruling that he be allowed to speak about his cases.

72.     The court in *Gordon* moved quickly at first.  On January 22, 2024, before Mr. Horwitz even had a chance to file a reply brief in support of his motion to speak, the court issued an order stating that Rule 83.04 was facially valid, and that Mr. Horwitz lacked standing to challenge the rule's application.

73.     The court's two-page ruling rejected Mr. Horwitz's facial challenge, citing court's general power to "restrict the expression" of attorneys.

74.     The court's facial analysis did not consider Mr. Horwitz's constitutional arguments or evaluate whether the rule's burden-shifting provision is consistent with the First Amendment.

75.     As to Mr. Horwitz's as-applied challenge, the court ruled that Mr. Horwitz could not challenge the constitutionality of Rule 83.04 because the rule "has not been applied in this

14

case." According to the court, it had "no basis" to rule on Mr. Horwitz's as-applied challenge and would not do so.

76.     The court appeared to be misled by CoreCivic's attempt to frame Mr. Horwitz's motion to speak about *Gordon* as an untimely one to reconsider the *Newby* gag order: The court stated that Mr. Horwitz was seeking "quasi-appellate, advisory" review of *Newby* because he was "unhappy with how L.R. 83.04 was handled by another judge in another (now-settled) case brought by a different plaintiff against CoreCivic in this district."

77.     The premise of Mr. Horwitz's motion, however, was not to seek reconsideration of the moot *Newby* gag order, but rather to seek a prospective constitutional evaluation of Rule 83.04 because it continued to impact Mr. Horwitz's ability to speak publicly about *any* of his cases against CoreCivic, including *Gordon*.

78.     Because Mr. Horwitz believed the court's initial ruling in *Gordon* was premised on CoreCivic's inaccurate representation of his motion and thus would have benefited from the arguments Mr. Horwitz planned to make in his reply brief, Mr. Horwitz filed a motion for reconsideration on January 30, 2024.

79.     Mr. Horwitz's motion to reconsider explained that the existence of a rule proscribing his speech, along with a credible threat of a legal process enforcing that rule, made his challenge ripe for review.  Settled principles of standing allow him to challenge the rule's constitutionality without first risking sanctions by violating the rule.

80.     He further explained that he needed (and still needs) to know whether he can exercise his constitutional right to speak freely about the cases against CoreCivic that are pending in the Middle District without exposing himself to sanctions or contempt.

81.    By declining to consider his as-applied challenge, this court was forcing him into a choice the First Amendment does not countenance: He must either (1) refrain from engaging in constitutionally protected speech or (2) litigate whether *Newby*'s reasoning was correct as he defended himself against a motion for contempt or sanctions.

82.    Because Mr. Horwitz was unwilling to subject himself or his clients to the risk of sanctions, including the possible dismissal of his clients' cases, Mr. Horwitz's only choice was to remain silent in his ongoing cases (violating his First Amendment rights) until he obtained a ruling on the merits of his motion.

83.    Additionally, Mr. Horwitz's motion for reconsideration reiterated that there was no way for this Court to apply Rule 83.04 consistently with the First Amendment because the rule's burden-shifting provision is facially unconstitutional.

84.    The court indicated that it was open to reconsidering its initial ruling in *Gordon* by ordering CoreCivic to respond to Mr. Horwitz's motion.

85.    After CoreCivic filed its opposition on February 15, 2024, Mr. Horwitz's motion for reconsideration remained pending for several months.

86.    Before the Court could rule, the parties in *Gordon* reached a settlement on May 20, 2024, once again mooting Mr. Horwitz's attempt to clarify his right to speak.  His motion for reconsideration had been pending for about four months.

87.    The dismissal of *Gordon* marked the third time a pending motion concerning Mr. Horwitz's right to speak about his litigation against CoreCivic became moot before this Court resolved the issue.

16

88.    Meanwhile, in *Burchard*, on May 15, 2024, Mr. Horwitz filed a motion to ascertain the status of his pending motion to speak along with the status of two other pending motions in that case.

89.    On June 3, 2024, the court in *Burchard* granted Mr. Horwitz's motion to ascertain as to his other motions, but not the motion to clarify his right to speak. The court said it would rule on the long-pending motion concerning Mr. Horwitz's First Amendment rights "in due course."

90.    The next month, on July 10, Mr. Horwitz filed another motion to clarify his rights under Rule 83.04, this time in *Shaw*.

91.    The motion in *Shaw* was the fifth time that Mr. Horwitz tried to vindicate his First Amendment right to speak about his litigation against CoreCivic in this Court. At that point, Rule 83.04 had substantially restricted his speech about CoreCivic for two years.

92.    Shortly thereafter, *Burchard* settled.

93.    This Court dismissed *Burchard* on August 27, 2024, without resolving Mr. Horwitz's motion to speak, which had been pending for over 10 months.

94.    The dismissal of the *Burchard* case was the fourth time a motion concerning Mr. Horwitz's right to speak about his litigation against CoreCivic became moot before this Court resolved the issue.

95.    At the time of filing this lawsuit, Mr. Horwitz's motion to speak in *Shaw* remains unresolved.

**Rule 83.04 Continues to Violate Mr. Horwitz's First Amendment Rights**

96.     Since July 2022, when the *Newby* gag order applied Rule 83.04 to restrict Mr. Horwitz's speech and warned him that he'd face sanctions if he violated the rule again, Mr. Horwitz has tried five times across five separate cases to obtain a ruling that vindicates his First Amendment rights.

97.     Despite his best efforts, Mr. Horwitz has been unable to obtain a ruling that—contrary to the text of Rule 83.04 and this Court's enforcement of that rule in *Newby*—Rule 83.04 cannot constitutionally prohibit the public statements he'd like to make about his cases against CoreCivic.

98.     Mr. Horwitz needs to know the extent to which Rule 83.04 restricts his speech about his litigation in the Middle District because he continues to litigate in this Court, and he continues to do so against CoreCivic—a party that has already invoked Rule 83.04 to silence Mr. Horwitz's speech and has demonstrated that it will do so again each time Mr. Horwitz asserts his right to speak.

99.     And this Court has already applied Rule 83.04 to silence Mr. Horwitz's out-of-court speech.

100.    This Court has also applied Rule 83.04 to the speech of other attorneys who litigate in the Middle District.  In at least one instance, the court made clear that dismissal of a lawsuit is an appropriate remedy for an attorney's repeated violations of Rule 83.04.[1]

---

[1] *See, e.g.*, *J.H. ex rel. Harris v. Williamson County*, No. 3:14-CV-02356, 2022 WL 2821943, at *3–4 (M.D. Tenn. July 19, 2022), *report and recommendation adopted*, 2022 WL 3270602 (M.D. Tenn. Aug. 10, 2022); *id.* at Docket Entry #426 (applying Rule 83.04 in an order granting in part a motion for protective order).

101. Since the *Newby* gag order applied Rule 83.04 to restrict Mr. Horwitz's speech, Mr. Horwitz has tried five times to clarify how Rule 83.04 can apply consistently with his First Amendment rights. But each time the underlying case settled (or was transferred to another district) before this Court resolved Mr. Horwitz's First Amendment claim.

102. The two times this Court issued an interlocutory ruling on the issue—in *Newby* and *Gordon*—Mr. Horwitz sought further relief through an appeal and motion for reconsideration, respectively, but his challenges became moot before this Court could issue a final ruling.

103. Mr. Horwitz's speech has now been substantially restricted for over 26 months despite his repeated efforts to obtain relief in his clients' cases.

104. Over those 26 months, Mr. Howitz's motions to speak have made this Court aware that Rule 83.04 and the *Newby* gag order continue to chill his out-of-court speech about his cases against CoreCivic.

105. Over those 26 months, this Court's only pronouncements on the constitutionality of Rule 83.04 and its applicability to Mr. Horwitz's speech about CoreCivic have been the *Newby* gag order and *Gordon*'s interlocutory decision rejecting Mr. Horwitz's facial challenge to the rule. No subsequent decision has called those rulings into question.

106. Over those 26 months, the lack of a final ruling on the constitutionality of Rule 83.04 has forced Mr. Horwitz to forgo extensive opportunities for public commentary about his litigation rather than risk sanctions or a finding of contempt, as Magistrate Judge Frensley warned in *Newby*.

107. Those 26 months of motions practice have shown that Mr. Horwitz is unlikely to be able to vindicate his constitutional rights in the context of one of his client's cases, so he reluctantly determined that a standalone lawsuit is the only way to ensure that the issue is not mooted or transferred before a ruling on Rule 83.04's constitutionality.

108. Mr. Horwitz needs a ruling on Rule 83.04's constitutionality because the rule continues to chill his speech about his cases against CoreCivic and subjects him to the risk of sanctions for exercising his First Amendment rights, just as it would chill the speech of any attorney of ordinary firmness.

109. The threat of enforcement—and the corresponding chill on Mr. Horwitz's speech—is exacerbated by the fact that CoreCivic has the power to initiate an action to enforce Rule 83.04, just as it did to obtain the *Newby* gag order.

110. It's likely CoreCivic will continue to invoke Rule 83.04 to suppress Mr. Horwitz's speech about its cases, as the prison contractor has opposed each of Mr. Horwitz's motions to speak and has repeatedly indicated its willingness to continue invoking Rule 83.04 against him.

111. But for Rule 83.04, Mr. Horwitz would have used traditional and social media to inform the public about the facts about many of his clients' cases—including *Tardy*, *Burchard*, *Gordon*, and *Shaw*—just like he did with *Newby* until this Court gagged him.

112. In *Newby*, before the gag order, Mr. Horwitz gave interviews about the case and posted dozens of times on social media about facts and evidence relating to *Newby* and CoreCivic generally, including the now-deleted examples set out in ¶ 50.

20

113.    Before the gag order, Mr. Horwitz also gave interviews related to his other pending cases against CoreCivic, including *Tardy*.[2]

114.    Mr. Horwitz continues to this day to get media requests to discuss his litigation against CoreCivic and the things he's learned about CoreCivic through that litigation.

115.    Mr. Horwitz has had an increase in media requests for comment since the Department of Justice announced its investigation into Trousdale Turner on August 20, 2024. Indeed, DOJ's investigation announcement cited the same sort of evidence that Mr. Horwitz used to tweet about and which he injected into the public domain.

116.    Because of the *Newby* gag order, though, Mr. Horwitz has turned down interview requests about his other pending cases against CoreCivic; turned down numerous requests for comment from reporters; and significantly restricted his public commentary about CoreCivic, including on social media.

117.    But for Rule 83.04, Mr. Howitz would respond to these media requests for comment and place the facts of his individual cases—the evidence that he alleged in his complaint and planned to prove at trial—into the broader context of the many tragic, senseless, and avoidable civil-rights abuses in CoreCivic's state-funded facilities.

118.    For example, Mr. Horwitz would respond to media requests about the Department of Justice's new investigation into the civil-rights abuses at Trousdale Turner and discuss the relevant facts from *Shaw* and *Farrar*.  His statements would characterize CoreCivic, Trousdale Turner, the staff at Trousdale Turner, and the facts of Mr. Shaw's and Mr. Farrar's

---

[2] *See, e.g.*, https://tennesseelookout.com/2022/05/31/after-eight-months-investigation-finds-hardeman-county-inmate-was-murdered-by-other-inmates/.

cases. He would also discuss other evidence about CoreCivic and Trousdale Turner that may well be inadmissible in those case under Federal Rule of Evidence 403, including the fact that CoreCivic has repeatedly threatened whistleblowers, retaliated against critics, and paid millions to settle civil-rights lawsuits arising out of its Tennessee prisons in just the past few years alone.

119.    Yet, because of Rule 83.04 and Mr. Horwitz's legitimate fear of sanctions by this Court, Mr. Horwitz has had to turn down media requests, and he has restricted his speech about his clients' cases against CoreCivic on the rare occasions that he does respond to media requests.

120.    The comments Mr. Horwitz would make about his ongoing cases against CoreCivic would be similar to those that subjected him to the *Newby* gag order.

121.    But for Rule 83.04, Mr. Horwitz would have informed the public about how CoreCivic has repeatedly violated his clients' civil rights, such as recounting:

    a.    The details of how LaEddie Coleman—the decedent in *Tardy*—was stabbed to death in a severely understaffed, unsupervised pod at a CoreCivic facility mere minutes after another inmate was stabbed near-fatally in the same unsupervised pod.

    b.    The details of how Mr. Burchard was knocked unconscious and raped in an understaffed and unsupervised pod in a CoreCivic facility after Mr. Burchard had warned guards of the specific danger he faced, yet they took no steps to protect him.

c.  The details of how Mr. Gordon was murdered in an understaffed CoreCivic facility that guards knew was riddled with contraband weapons; how guards knew Mr. Gordon's life was in danger but took no steps to protect him; and how guards viewed Mr. Gordon's murder live on a surveillance monitor but did not intervene to save his life as he bled out in an unsupervised pod.

d.  The details of how a guard at a CoreCivic facility intentionally slammed a cell door shut on Mr. Shaw's hand so hard that it severed his finger, and how the guard stood by and laughed at the maiming rather than getting Mr. Shaw immediate medical attention.

e.  The details of how guards at a CoreCivic facility knew that an inmate was dangerous, had just assaulted a nurse, and had threatened to do something to get himself sent to maximum security unless CoreCivic transferred him there; and yet CoreCivic still placed that dangerous inmate alone in Mr. Farrar's cell without bothering to search him for weapons.

122.  Mr. Horwitz would publish a press release about the *Farrar* case outlining the facts detailed in ¶ 121(e).  A draft of the press release that Mr. Horwitz would like to publish is attached to this Complaint as Exhibit A.

123.  Mr. Horwitz would also post about *Shaw* and *Farrar* on the social-media platforms Twitter (now formally called "X") and Bluesky.

124.  Specifically, Mr. Horwitz would publish statements about *Shaw* and *Farrar*, including the following:

23

a.  A guard at one of @CoreCivic's Tennessee prisons slammed Tyrone Shaw's hand in his cell door so hard that it severed his finger. Instead of getting him immediate medical attention, the guard cackled about having maimed him.

b.  Guards at @CoreCivic's @TrousdaleTurner ignored multiple pleas from an inmate to be placed in protective custody after threats from gang members. He was then stabbed seven times as a guard watched and did nothing. Now we're suing: [[link]].

c.  @CoreCivic continues to subject inmates to unconscionable conditions. This time, they ignored multiple pleas for protection from an inmate who ended up getting stabbed seven times: [[link]].

d.  Former inmate Kevin Farrar asked to be placed in protective custody several times after gang threats. Instead, @CoreCivic locked him in a cell with a known gang member who was armed with a shank, leading to Farrar being brutally stabbed. We're suing: [[link]].

e.  Kevin Farrar was stabbed seven times by a gang member because the people who run @CoreCivic's private prisons ignored his pleas for protection. We're suing. Read the complaint here: [[link]].

f.  I've filed my ninth federal case since 2022 challenging the rampant civil-rights abuses in CoreCivic of Tennessee's state-funded prisons: [[link]]. The time for accountability is now.

g.  I've received calls from too many mothers whose children were incarcerated at @CoreCivic's @TrousdaleTurner and never made it out alive.  Kevin Farrar was

24

lucky to escape with his life because CoreCivic refuses to protect the inmates in its care.

> h. Our cases against @CoreCivic show why the DOJ's investigation into @TrousdaleTurner was so desperately needed.

125. Mr. Horwitz reasonably expects that he would then receive media requests to comment on *Shaw* and *Farrar*, just as he did with *Newby*.

126. But for Rule 83.04, Mr. Horwitz would respond to those media requests by placing the facts of Mr. Shaw's and Mr. Farrar's pending cases in the broader context of the civil-rights abuses at Trousdale Turner that the Department of Justice is now investigating.

127. Since the *Newby* gag order, however, Mr. Horwitz has spoken publicly about his cases against CoreCivic on only rare occasions and with great trepidation, and he has largely restricted his public commentary to general statements that do not touch on the facts of specific cases that he has litigated in the Middle District.

128. Rule 83.04 forces Mr. Horwitz to walk a careful line of speaking generally about the ways he thinks CoreCivic is bad for Tennessee without commenting on the specifics of any of his ongoing litigation in this Court. And to the extent he ever steps over that line, he risks being sanctioned.

129. Despite Mr. Horwitz's caution, it's nearly impossible for him to guess which statements about CoreCivic could be construed as touching on the "character" or "credibility" of CoreCivic under Rule 83.04(a)(2)(B), or guess how specifically he can speak about his cases before it counts as "evidence regarding the occurrence or transaction" under Rule

25

83.04(a)(2)(A), or guess what might count as inadmissible evidence in Mr. Horwitz's ongoing litigation under Rule 83.04(a)(2)(D).

130.     The injury to Mr. Horwitz's right to free speech is exacerbated by how difficult it is to determine precisely what speech this Court considers to be within the scope of Rule 83.04.

131.     Because Magistrate Judge Frensley's application of Rule 83.04 was so broad, and because Rule 83.04(a)(2)'s presumption of prejudice and burden-shifting provision means non-prejudicial speech can fall under the rule's prohibition, it is nearly impossible for Mr. Horwitz to know what public speech about CoreCivic is allowed, so he restricts all discussion of his cases.

132.     That uncertainty forces Mr. Horwitz to err on the side of silence and chill his otherwise legitimate speech about his litigation in the Middle District.

133.     As a result, Rule 83.04 has injured and continues to injure Mr. Horwitz's First Amendment rights and his right to due process.

## CLAIMS FOR RELIEF

### COUNT I

### Facial Violation of the First Amendment

134.     Mr. Horwitz realleges and incorporates by reference the allegations in ¶¶ 1 – 133 of this complaint as if they are fully restated here.

135.     Rule 83.04 is facially invalid under the First Amendment.

136.     The rule imposes a content- and speaker-based restriction on out-of-court speech.

26

137.   Subsection 83.04(a)(2) unconstitutionally creates a presumption against certain speech by attorneys (but not parties and witnesses) and shifts the burden to the speaker to prove that their speech is non-prejudicial.

138.   The First Amendment imposes on the government (or a party asking the government to censor speech) a heavy burden of proving both that the government has a compelling interest in restricting speech and that the desired restriction is narrowly tailored to that interest.

139.   The government (or a party asking the government to censor speech) must, therefore, prove that the proposed restrictions on speech are both justified and not unduly burdensome.

140.   By misassigning the burden of proof to the speaker, Rule 83.04 imposes an unconstitutional restriction on the free-speech rights of attorneys who practice in the Middle District.

141.   Subsection 83.04(a)(2)'s burden-shifting provision violates the First Amendment in every instance.

142.   Even without the explicit burden-shifting requirement, Rule 83.04(a)(2) imposes an unconstitutional restriction on the free-speech rights of attorneys who practice in the Middle District by presuming that four broad categories of speech are prejudicial.

143.   The presumptions of prejudice created by 83.04(a)(2)(A)–(D) violate the First Amendment in every instance.

144. As a direct and proximate result of Rule 83.04(a)(2)'s burden-shifting and presumption of prejudice, Mr. Horwitz has suffered and continues to suffer an injury to his First Amendment right to speak publicly about his litigation in the Middle District.

## COUNT II
### As-Applied Violation of the First Amendment

145. Mr. Horwitz realleges and incorporates by reference the allegations in ¶¶ 1 – 133 of this complaint as if they are fully restated here.

146. Rule 83.04 violates the First Amendment in the way this Court applies the rule and in how it has applied the rule to Mr. Horwitz.

147. To apply consistently with the First Amendment, a court rule can restrict attorneys' public speech *only* when the proponent of that restriction produces actual evidence showing that the claimed harms are real and the desired restriction will, in fact, alleviate those harms in a material way.

148. To apply Rule 83.04 consistently with the First Amendment, this Court's prohibitions on attorney speech must also be limited to the least restrictive means of censorship necessary to protect the fairness of proceedings, such as *voir dire*, curative instructions, and more-tailored speech restrictions. A blanket gag order must be the last resort.

149. Rule 83.04's application must be limited to instances when a party seeking to invoke the rule has actual evidence of material prejudice. And even then, the First Amendment permits a gag order only when less restrictive means would not mitigate the harm.

150. As *Newby* demonstrates, however, this Court applies Rule 83.04 in a manner inconsistent with First Amendment scrutiny.

151.    Rule 83.04 restricts extrajudicial speech without any real evidence that the speech will prejudice trial.

152.    Applying Rule 83.04 to impose a broad gag order as this Court did in *Newby* is not the least-restrictive means necessary to ensure a fair trial.

153.    Rule 83.04 has imposed an impermissible burden on Mr. Horwitz's out-of-court speech about his litigation in the Middle District.

154.    The Court's past application of Rule 83.04 has reinforced the unconstitutional burden on Mr. Horwitz's speech about his litigation in the Middle District.

155.    Mr. Horwitz—like any reasonable attorney in his position—does not know what out-of-court speech about his litigation in the Middle District will violate Rule 83.04 because this Court does not require any actual evidence of prejudice.

156.    Mr. Horwitz—like any reasonable attorney in his position—has been forced by Rule 83.04 to restrict his out-of-court speech about his litigation in the Middle District for fear of incurring sanctions or contempt, and he risks incurring sanctions and contempt whenever he exercises his First Amendment right to speak about the subject matter covered by Rule 83.04.

157.    As a direct and proximate result of Rule 83.04 and this Court's application of that rule, Mr. Horwitz has suffered and continues to suffer an injury to his First Amendment right to speak publicly about his litigation in the Middle District.

## COUNT III

## Vagueness Violation of the First and Fifth Amendments

158.    Mr. Horwitz realleges and incorporates by reference the allegations in ¶¶ 1 – 133 of this complaint as if they are fully restated here.

159.    Local Rule 83.04 is void for vagueness.

160.    The Fifth Amendment's Due Process Clause prohibits laws that are impermissibly vague.

161.    The vagueness doctrine ensures that people have fair notice of what conduct falls under a law's proscription and that judges have a clear standard for the law's enforcement.

162.    A person of common intelligence must be able to understand a law's meaning and what conduct the law forbids.

163.    Otherwise, a vague law can invite arbitrary enforcement by allowing a judge to draw the law's boundaries on an *ad hoc* and subjective basis.

164.    This constitutional problem is compounded when a vague law regulates speech, as a law's vagueness can arbitrarily suppress First Amendment liberties.

165.    A vague regulation of speech chills a speaker's First Amendment rights because they cannot be sure whether their speech is subject to the regulation and, as a result, must self-censor their speech broadly to avoid violating the regulation.

166.    Rule 83.04—both on its face and as this Court has applied it to Mr. Horwitz's speech—is unconstitutionally vague.

30

167. Rule 83.04 presumes prejudice from any speech about the character of the parties—even government agencies and corporations—as well as any speech about the evidence that may be presented in the case *or* things that may not be admissible as evidence in the case.

168. In other words, a fair reading of Rule 83.04—and the reading adopted by Magistrate Judge Frensley—prohibits an attorney from speaking publicly about nearly anything to do with their case or the parties to that litigation, regardless of whether a reasonable attorney would believe that speech could actually prejudice proceedings.

169. As a result, when Mr. Horwitz wants to speak publicly about anything having to do with the civil-rights abuses in CoreCivic prisons, he must carefully walk a blurry line of speaking on general topics about which his legal expertise and personal experiences are relevant without commenting on the specifics of any of his ongoing litigation in this Court.

170. It's virtually impossible for Mr. Horwitz to guess before he makes public statements about his litigation what level of factual detail he's allowed to share with the public without it coming under Rule 83.04(a)(2)(A) ("Evidence regarding the occurrence or transaction involved.").

171. It's virtually impossible for Mr. Horwitz to guess before he makes a public statement what comments about CoreCivic could go to the "character" or "credibility" of the prison corporation under Rule 83.04(a)(2)(B). Indeed, it's not even clear whether there can be character evidence about a corporation.

172. It's also virtually impossible for Mr. Horwitz to guess before he makes a public statement what comments about CoreCivic would qualify as "[i]nformation that … is likely

31

to be inadmissible as evidence" in his ongoing litigation against CoreCivic under Rule 83.04(a)(2)(D).

173.    Many things that Mr. Horwitz would like to say about his past cases or the ongoing Department of Justice investigation into Trousdale Turner would not, for instance, be admissible as evidence in *Shaw* or *Farrar,* and thus would seem to come under 84.03(a)(2)(D).

174.    Yet, because of Rule 83.04's vague language and Mr. Horwitz's legitimate fear of sanctions by this Court, Mr. Horwitz has had to restrict his speech about his clients' cases against CoreCivic whenever he shares his insights into CoreCivic's past conduct and the Department of Justice's investigation into Trousdale Turner.

175.    The injury to Mr. Horwitz's right to free speech is exacerbated by how difficult it is to determine precisely what speech this Court considers to be within the scope of Rule 83.04.

176.    The vagueness of Rule 83.04 creates uncertainty about what speech is allowed, which forces Mr. Horwitz to err on the side of silence and chill his otherwise legitimate speech about his litigation in the Middle District.

177.    As illustrated by the *Newby* gag order, the vagueness of Rule 83.04 invites arbitrary enforcement and allows opposing parties to exploit the rule's vague and overbroad language to silence their party-opponent's speech—even when there's no actual threat that the speech would prejudice proceedings.

178.    The harm caused by Rule 83.04's vagueness, and Magistrate Judge Frensley's application of that rule, continues to injure Mr. Horwitz.

179.     Because Magistrate Judge Frensley's application of Rule 83.04 was so broad, and because Rule 83.04's burden-shifting provision means non-prejudicial speech can fall under the rule's prohibition, it is nearly impossible for Mr. Horwitz to know what public speech about his party-opponents is permissible, so he restricts discussion of his cases—regardless of whether there's any genuine likelihood that his speech would prejudice CoreCivic in Mr. Horwitz's ongoing litigation against the prison.

180.     Due to Rule 83.04's vagueness, the rule restricts lots of constitutionally protected speech in its overbroad attempt to protect trials against prejudice caused by extrajudicial speech.

181.     As a direct and proximate result of Rule 83.04's vagueness, Mr. Horwitz has suffered and continues to suffer an injury to his Fifth Amendment right to due process, which has further restricted his First Amendment right to speak publicly about his litigation in the Middle District.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court provide the following relief:

A.     A declaration that Middle District of Tennessee Local Rule 83.04(a)(2)'s burden-shifting provision violates the First Amendment.

B.     A declaration that Middle District of Tennessee Local Rule 83.04(a)(2)'s presumption of prejudice violates the First Amendment.

C.     A declaration that Middle District of Tennessee Local Rule 83.04 may be applied only when a judge or party seeking to restrict an attorney's speech has shown,

33

with evidence, that restricting that speech is necessary to prevent materially prejudicing another's party's right to a fair trial.

D.   A declaration that Middle District of Tennessee Local Rule 83.04(a)(2) is void for vagueness.

E.   Enjoin Defendants from enforcing Middle District of Tennessee Local Rule 83.04(a)(2)'s presumption of prejudice and burden-shifting provision.

F.   Enjoin Defendants from enforcing Middle District of Tennessee Local Rule 83.04 to restrict Plaintiff's extrajudicial speech about his cases in this Court unless a party to the litigation provides actual evidence that (1) Plaintiff's speech is substantially likely to materially prejudice an impending trial and (2) restricting Plaintiff's speech is the least-restrictive means of ensuring a fair trial.

G.   Enjoin Defendants from enforcing Local Rule 83.04 as unconstitutionally vague.

H.   Attorneys' fees and costs; and

I.   Any other relief that the Court deems appropriate.

34

Dated: September 30, 2024

Respectfully,

/s/ Jared McClain

Braden H. Boucek
Tenn. BPR No. 021399
Ga. Bar No. 396831
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Ste. 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org

Jared McClain
Benjamin A. Field
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, Virginia 22203
(703) 682-9320
jmcclain@ij.org
bfield@ij.org

*Counsel for Plaintiff Daniel A. Horwitz*

35