# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DANIEL A. HORWITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-1180 |
| v. | ) | |
| | ) | |
| U.S. DISTRICT COURT FOR THE | ) | |
| MIDDLE DISTRICT OF TENNESSEE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF DANIEL HORWITZ'S MOTION FOR PRELIMINARY INJUNCTION

---

## INTRODUCTION

Middle District of Tennessee Local Rule 83.04 unduly restricts attorneys from discussing their litigation in public. Plaintiff Daniel Horwitz, a civil-rights attorney who litigates frequently in the Middle District, brought this suit to challenge Rule 83.04 and vindicate his right to speak publicly about his cases.

To satisfy First Amendment scrutiny, a court can restrict an attorney's out-of-court speech only when there's real evidence that specific statements are substantially likely to materially prejudice an impending trial. Any restriction of extrajudicial speech must then be the least restrictive means to ensure a fair trial. Rule 83.04(a)(2) inverts this standard by presuming that anything an attorney says publicly about a broad range of things—from the evidence in the case to the character of the parties—will likely prejudice proceedings. Under the rule, an attorney who wants to tell the public about his case must overcome that presumption and prove his speech is *not* prejudicial. Such presumptions against open dialogue violate the First Amendment.

Rule 83.04 has unduly restricted Mr. Horwitz's speech since July 2022, when the Middle District applied its local rule to gag Mr. Horwitz's out-of-court speech about his case against CoreCivic, a private prison contractor that operates on behalf of Tennessee. The court warned Mr. Horwitz that if he continued to speak publicly about CoreCivic he could be held in contempt. Because Mr. Horwitz litigates against CoreCivic in the Middle District nearly perpetually, it's important that he obtains a ruling on the constitutional scope of Rule 83.04's prohibitions. But despite Mr. Horwitz's diligence—he filed motions to speak in five separate cases against CoreCivic—the Middle District has not ruled on his constitutional challenge. So, over two years since his gag order, Mr. Horwitz *still* cannot comment on his cases against CoreCivic without credible fear of reprisal from the Court.

1

Accordingly, Mr. Horwitz seeks a preliminary injunction to restore his right to speak publicly about his cases in the Middle District during the pendency of this suit. Rule 83.04 violates the First Amendment both on its face and as applied to Mr. Horwitz's public speech about the cases he brings in the Middle District; alternatively, it is void for vagueness. Mr. Horwitz is likely to prove as much at trial. Because the ongoing injury to his freedom of expression is irreparable and because the equities and public interest favor vindicating First Amendment rights promptly, this Court should grant Mr. Horwitz's motion.

## RELEVANT FACTS

### A. Mr. Horwitz Brings Public-Interest Cases in the Middle District

Mr. Horwitz is a constitutional lawyer who brings public-interest cases against the government on issues ranging from free speech to religious liberty to prisoners' rights. Horwitz Decl. ¶ 3. As a public-interest attorney, Mr. Horwitz's advocacy is not limited to the courtroom. *Id.* ¶ 4. His ability to explain constitutional issues to the public, and why those issues matter, is an important part of his job. *Id.* ¶ 5. Media coverage of his commentary brings public attention to the important issues he litigates that can help prompt reform—both for his clients and those similarly situated. *Id.* ¶ 6. Mr. Horwitz's commentary also vindicates the public's right to know how its government operates and the ways in which the government and its contractors fall short of serving the public's interest. *Id.* ¶ 7.

Based in Nashville, Mr. Horwitz has litigated dozens of cases in the Middle District of Tennessee. *Id.* ¶ 8. Many of those cases have been against CoreCivic of Tennessee, LLC, a private contractor that operates prisons on behalf of Tennessee. *Id.* ¶ 9. Since 2020, Mr. Horwitz has litigated at least 10 prisoners' rights lawsuits against CoreCivic in the Middle District. *Id.* ¶ 10. He will continue to bring more of these cases since experience shows, unfortunately, that CoreCivic will continue to violate people's constitutional rights. *Id.* ¶ 11.

2

The Middle District's application of its Local Rule 83.04 to Mr. Horwitz's litigation against CoreCivic, however, has fundamentally restricted Mr. Horwitz's ability to speak about his cases. *Id.* ¶ 12. The issue began in Summer 2022, while Mr. Horwitz was engaged in discovery in *Newby v. CoreCivic of Tenn., LLC*, No. 22-cv-00093, a lawsuit over the murder of Terry Childress at a CoreCivic facility. Horwitz Decl. ¶ 13.

After filing *Newby*, Mr. Horwitz posted on social media about the case more than a dozen times and did interviews with television and print news outlets. *Id.* ¶ 14. Then, on June 10, 2022, CoreCivic filed a "Motion for Compliance with Local Rule 83.04 and to Strike," asking the court to impose a gag order on Mr. Horwitz and order him to delete his public comments about the case. *Newby*, No. 22-cv-00093, ECF 46. CoreCivic asserted that Mr. Horwitz's commentary about Mr. Childress' death and the conditions in CoreCivic facilities more generally inherently prejudiced CoreCivic's right to a fair trial. *Id.* at 1, 4, 12, 15–18. Rather than offer proof of prejudice—something that CoreCivic couldn't do—CoreCivic merely invoked Rule 83.04, which shifted the burden to Mr. Horwitz to prove that his speech would not prejudice the prison company's right to a fair trial. *See id.*

### B. Rule 83.04 & the Middle District's Application of the Rule

Rule 83.04(a)(1) provides that any lawyers who investigate or litigate a matter in the Middle District "must not make any extrajudicial statements (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative matter, including especially that will interfere with a fair trial." Subsection 83.04(a)(2) then defines four broad categories of content for which the court presumes that an attorney's public speech "is more likely than not" to be materially prejudicial:

A.  Evidence regarding the occurrence or transaction involved in the case;

B.  The character, credibility, or criminal record of a party, witness, or prospective witness;

C.  The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test; or

D.  Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

Together, the first and fourth categories restrict an attorney's comments on things that might be evidence in the case *and* things that cannot be evidence in the case. If an attorney speaks publicly about any of these broad categories of content, the rule forces him to prove his speech will not prejudice proceedings.

On July 15, 2022, Magistrate Judge Frensley applied Rule 83.04 to gag Mr. Horwitz's public speech about *Newby* and CoreCivic. *Newby*, No. 22-cv-00093, ECF 53 [a copy is attached as Ex. 1]. Magistrate Judge Frensley ruled that Mr. Horwitz's public comments "fit squarely within the prohibition on extrajudicial statements[,]" because he made "assertions regarding [CoreCivic] in general and specific to th[e *Newby*] litigation." *Id.* at 4. "Trials are meant to occur in the courtroom, not the media," the decision admonished as it criticized Mr. Horwitz for "actively seeking media attention for his client's case." *Id.* at 5.

Based solely on Rule 83.04's presumption of prejudice—without any evidence of prejudice whatsoever—the court concluded that "Mr. Horwitz's comments have a substantial likelihood of materially prejudicing an adjudicative proceeding in this manner, especially interfering with a fair trial." *Id.* at 7. The court also summarily rejected Mr. Horwitz's First Amendment defense, "despite Mr. Horwitz's assertions that the present case is unlikely to go

4

to trial, and that voir dire can ensure a neutral jury in the event of a trial[.]" *Id.* Accordingly, the court ordered Mr. Horwitz "to refrain from extrajudicial statements regarding this matter and to delete those over which he has control[.]" *Id.* The order also "warn[ed] Mr. Horwitz that his responsibility in this litigation is to be an advocate, not an investigative journalist, and that continuing to seek out media attention for this case would place him at risk of being held in contempt of this Court." *Id.*

In compliance with the gag order, Mr. Horwitz deleted dozens, if not hundreds, of public statements about CoreCivic—spanning years—from his social media accounts. Horwitz Decl. ¶ 15. Since then, he has severely limited his public discussion of his cases. *Id.* ¶ 16.

### C. Mr. Horwitz Has Tried to Vindicate His Right to Speak Since July 2022

Mr. Horwitz has tried five times to address the constitutionality of Rule 83.04 within his litigation against CoreCivic. But despite his diligence, he has been unable to obtain a final ruling from the Middle District on the issue.

After Magistrate Judge Frensley issued the *Newby* gag order, Mr. Horwitz sought a district judge's review. While that motion was pending, however, *Newby* settled—well in advance of trial, just as Mr. Horwitz's cases against CoreCivic always do. Horwitz Decl. ¶ 17. So, Mr. Horwitz filed a third-party motion on his own behalf asking the court to resolve his challenge to the gag order notwithstanding the settlement. As Mr. Horwitz explained, he is a repeat litigator against CoreCivic in the Middle District and those cases always settle, making the issue both capable of repetition and likely to evade review. The court denied Mr. Horwitz's motion as moot on December 2, 2022, and dismissed the case.

The court's interpretation of Rule 83.04 in *Newby* forced Mr. Horwitz to restrict his speech about *all* his cases against CoreCivic. Horwitz Decl. ¶ 18. In fact, by the time the court dismissed *Newby*, Mr. Horwitz had already been gagged for nearly five months and had

already filed another case against CoreCivic in the Middle District, *Tardy v. CoreCivic of Tennessee LLC*, No. 22-cv-00681 (filed Sept. 2, 2022). So, on May 12, 2023, Mr. Horwitz filed a motion to vindicate his right to speak about *Tardy*. CoreCivic opposed the motion, arguing that Mr. Horwitz's public commentary about the case constitutes "inadmissible opinion testimony." No. 22-cv-00681, ECF 93, at 17. The issue remained pending for over four months, until September 26, 2023, when the Middle District transferred the case to the Western District. *Tardy*, No. 22-cv-00681, ECF 100. The Western District dismissed Mr. Horwitz's motion as moot because that court does not have a version of Rule 83.04 to prohibit attorneys' extrajudicial speech. *See Tardy*, 23-cv-01202, ECF 114 (W.D. Tenn.). The Western District does, however, routinely hold trials without attorneys' public speech prejudicing the proceedings.

Since *Tardy*, Mr. Horwitz has filed similar motions to speak in three more cases.[1] CoreCivic has opposed each attempt. The only one of those motions on which the Middle District ruled was in *Gordon v. CoreCivic of Tennessee, LLC*, and even then, the court never issued a final order. *See* No. 23-cv-01195, ECF 40.

The court in *Gordon* initially denied Mr. Horwitz's motion, holding that Rule 83.04 was facially valid and that Mr. Horwitz lacked standing to challenge the rule's application. *Id.* at 2. Citing its general power to "restrict the free expression" of attorneys, the court rejected Mr. Horwitz's facial challenge without addressing the constitutional arguments against the rule's burden-shifting provision. *Id.* The court held that it had "no basis" to rule on an as-applied challenge because Rule 83.04 "has not been applied in this case." *Id.* Mr. Horwitz filed a motion for reconsideration on January 30, 2024, and the court ordered CoreCivic to

---

[1] *Gordon v. CoreCivic of Tenn., LLC*, No. 23-cv-01195 (filed Nov. 13, 2023); *Buchard v. CoreCivic of Tenn., LLC*, No. 23-cv-00455 (filed May 8, 2023); *Shaw v. CoreCivic of Tenn., LLC*, No. 24-cv-00681 (filed June 4, 2024).

respond. Once CoreCivic did so, however, the motion for reconsideration remained pending for several months until *Gordon*, too, settled, thereby mooting Mr. Horwitz's motion to speak.

By this point, Mr. Horwitz has tried five times to get the Middle District to resolve his right to speak about his cases against CoreCivic. Four of those motions became moot before the court resolved them, and the fifth, in *Shaw*, remains pending. That's why he reluctantly had to take the extraordinary step of suing the court to finally obtain relief.[2]

### D. Rule 83.04 Continues to Injure Mr. Horwitz's First Amendment Rights

Despite Mr. Horwitz's best efforts, he has been unable to get a final ruling on whether Rule 83.04 can constitutionally prohibit the public statements he'd like to make about his cases against CoreCivic—a party that has already invoked Rule 83.04 and has demonstrated that it will do so again each time Mr. Horwitz asserts his right to speak.[3] The Middle District has substantially restricted Mr. Horwitz's speech for over two years. During that time, Mr. Horwitz has repeatedly made the court aware that Rule 83.04 and its interpretation in the *Newby* gag order continue to chill his speech about his cases against CoreCivic. But the lack of a final ruling on Rule 83.04's constitutionality has forced Mr. Horwitz to forgo extensive

---

[2] While uncommon, a lawsuit against a court and its judges is an appropriate method for challenging a court's speech restrictions. *See, e.g., Donald K. Stern, in his official capacity as U.S. Atty. for the Dist. of Mass. v. Supreme Judicial Court for the Commonwealth of Mass.*, 16 F. Supp. 2d 88 (D. Mass. 1998) (also suing D. Mass. and its district judges); *Sheldon Whitehouse, in his official capacity as U.S. Atty. for the Dist. of Rhode Island v. U.S. Dist. Court for the Dist. of Rhode Island*, 53 F.3d 1349 (1st Cir. 1995) (also suing the district judges for D.R.I., the Supreme Court of Rhode Island, and the Justices of the Supreme Court of Rhode Island); *Hirschkop v. Hon. Harold F. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) (ACLU suing the Justices of the Supreme Court of Virginia).

[3] Indeed, when asked to comment on this lawsuit, "CoreCivic said the organization was aware of the litigation, and their 'position regarding the local rules of court involving litigation brought against us has not changed.'" Angele Latham, *Nashville attorney fights court gag order for CoreCivic social media posts around lawsuits*, The Tennessean (Oct. 1, 2024), *available at* https://bit.ly/3YxSaB6.

opportunities for public commentary about his litigation rather than risk sanctions or a finding of contempt, as *Newby* warned. Horwitz Decl. ¶¶ 15–24.

Rule 83.04 continues to chill Mr. Horwitz's speech about his cases against CoreCivic and subjects him to the risk of sanctions for exercising his First Amendment rights, just as it would chill the speech of any attorney of ordinary firmness. As an attorney practicing in the Middle District, Mr. Horwitz is the object of the rule's speech restriction, and he is quite clearly exposed to sanctions if he does not comply.

But for Rule 83.04, Mr. Horwitz would have used traditional and social media to inform the public about the facts of *Tardy*, *Burchard*, *Gordon*, and *Shaw*—just like he did until the *Newby* gag order. Horwitz Decl. ¶ 19. Mr. Horwitz continues to get media requests to discuss his litigation against CoreCivic and the things he's learned about CoreCivic through that litigation. *Id.* ¶ 20. Those requests have multiplied since the Department of Justice announced an investigation into Trousdale Turner on August 20, 2024. *Id.* ¶ 21. Because of Rule 83.04 and the *Newby* gag order, though, Mr. Horwitz has turned down interview requests about his other pending cases against CoreCivic; turned down numerous requests for comment from reporters; limited his posts on social media; and significantly restricted his public commentary about CoreCivic, including about how the facts of his cases fit into the broader context of the many senseless and avoidable civil-rights abuses in CoreCivic's state-funded facilities. *Id.* ¶¶ 22–24.

The threat of enforcement—and the corresponding chill on Mr. Horwitz's speech—is exacerbated by the fact that CoreCivic has the power to initiate an action to enforce Rule 83.04, just as it did to obtain the *Newby* gag order. It's likely CoreCivic will continue to invoke Rule 83.04 to suppress Mr. Horwitz's speech about its cases, as the prison contractor has opposed each of Mr. Horwitz's motions to speak and has repeatedly indicated its willingness

to continue invoking Rule 83.04 against him. And because *Newby*'s capacious reading of the Rule remains the court's most definitive interpretation, and Rule 83.04(a)(2)'s presumption of prejudice and burden-shifting provision capture non-prejudicial speech under the rule's prohibition, it is nearly impossible for Mr. Horwitz to know what public speech about CoreCivic is allowed. So, he must err on the side of silence and chill his otherwise legitimate speech about his litigation in the Middle District.

## STANDARD OF REVIEW

A party seeking a preliminary injunction must ordinarily show a likelihood of success on the merits, irreparable harm, that the balance of equities favors them, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In a First Amendment case, however, the likelihood of success on the merits is all but determinative. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 404 (6th Cir. 2022). That's because a First Amendment injury, "for even minimal periods of time," is irreparable. *Sisters for Life*, 56 F.4th at 408. And the equities and the public interest, which merge when the government is a party, favor the preservation of an individual's free speech rights. *See Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 109 F.4th 453, 474 (6th Cir. 2024); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). A preliminary injunction is appropriate, then, if there are serious questions about the merits "as to make them [] fair ground[s] for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). It's the government's burden to prove that the preliminary injunction should *not* be granted because its restriction is likely to satisfy heightened scrutiny. *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

9

## I.  Likelihood of Success on the Merits

Mr. Horwitz is likely to prevail on each of his three claims.  Rule 83.04(a)(2) is facially unconstitutional because courts cannot presume speech is prejudicial and force the speaker to prove otherwise.  The rule is also unconstitutional as applied because the way the Middle District has implemented the rule to gag Mr. Horwitz's speech does not satisfy strict scrutiny.  Alternatively, Rule 83.04 is void for vagueness because no one can reasonably predict exactly what speech the rule proscribes.

### A.  Mr. Horwitz Is Likely to Prevail on His First Amendment Claims

#### 1.  Rule 83.04 Must Satisfy Strict Scrutiny

The right to speak critically of the government and those who carry out its functions is fundamental.  *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).  That fundamental right extends to attorneys, *Fla. Bar v. Went for It*, 515 U.S. 618, 634 (1995), particularly when the cases they discuss involve issues "of public importance."  *See Wood v. Georgia*, 370 U.S. 375, 388 (1962); *see also King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) ("[P]arties and their attorneys are free to use litigation 'as a vehicle for effective political expression and association.'") (quoting *In re Primus*, 436 U.S. 412, 431 (1978)). Mr. Horwitz's public-interest cases challenging the government and its prison contractor[4] are precisely the type of litigation that involves "matters of utmost public concern."  *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838–39 (1978).  Safeguarding his right to discuss these cases protects not only his First Amendment right to speak but also the "reciprocal" rights of everyone else who wants to listen.  *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S.

---

[4] *Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 375 (Tenn. Ct. App. 2009) ("[T]his Court is at a loss as to how operating a state prison could be considered anything less than a governmental function.").

748, 756–57 (1976).

That's why courts must apply the "broad conception" of the First Amendment "necessary 'to supply the public need for information and education with respect to the significant issues of the times.'" *Wood*, 370 U.S. at 388. One way courts accomplish this is by applying "strict" or "rigorous scrutiny" to laws restricting speech—particularly those that burden political speech or impose content- or speaker-based restrictions. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565–66 (2011); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000).

As relevant here, strict scrutiny applies for several reasons: Rule 83.04 applies based on a speaker's identity and the content of their speech, and it restricts discussion of the important political issues at stake in Mr. Horwitz's lawsuits. *Sorrell*, 564 U.S. at 565–66; *Citizens United*, 558 U.S. at 340; *Playboy*, 529 U.S. at 812; *cf. Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (strict scrutiny for restrictions on judges' extrajudicial speech). Specifically, Rule 83.04 restricts whole categories of things Mr. Horwitz can say as he explains the need for reform in Tennessee's privately run prisons solely because he's an attorney (rather than a witness or party) in a case implicating that issue.

Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). To withstand strict scrutiny, a rule restricting speech "must be couched in the narrowest terms that will accomplish the pin-point objective permitted by the constitutional mandate and the essential needs of the public order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968). There must be both a compelling interest and narrow tailoring. *Sable Comm'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). The government cannot employ "means that broadly stifle fundamental personal

11

liberties when the end can be more narrowly achieved."[5]  *Shelton v. Tucker*, 364 U.S. 479, 488 (1960).

The same strict scrutiny applies when courts restrict speech about judicial proceedings. Although courts have the power to protect the fairness of their proceedings, *Pennekamp v. Florida*, 328 U.S. 331, 347 (1946), the First Amendment does not allow the judiciary to suppress speech without a proper showing that the speech threatens the administration of justice, *Craig v. Harney*, 331 U.S. 367, 373 (1947).

The Supreme Court held in *Gentile v. State Bar of Nevada* that to restrict an attorney's out-of-court speech, a court must satisfy strict scrutiny by mustering evidence that the specific speech at issue "will have a substantial likelihood of materially prejudicing an adjudicative proceeding." 501 U.S. 1030, 1033, 1061 (1991).  *Gentile* concerned the speech of a criminal-defense attorney[6] who faced sanctions because, six months before a highly publicized trial, he held a press conference to declare his client's innocence and to say that the evidence would

---

[5] Even under intermediate scrutiny, the government cannot, out of convenience, use broad speech restrictions that substantially restrict speech beyond its significant interests. *McCullen v. Coakley*, 573 U.S. 464, 478–79, 486 (2014).

[6] *Gentile* was about protecting the fairness of criminal trials.  Federal circuit courts have recognized, however, that restrictions on attorney speech are even harder to justify in civil cases given the "greater insularity against the possibility of interference with fairness in criminal cases"; the "more prolonged" nature of civil cases; and the fact that "many important social issues [are] entangled to some degree in civil litigation." *Chi. Council of Laws. v. Bauer*, 522 F.2d 242, 257–58 (7th Cir. 1975); *see also Hirschkop*, 594 F.2d at 373 (holding that a rule restricting attorney speech was constitutional as applied to criminal trials but "invalid" and "overbroad" as applied to civil trials, given "[t]he dearth of evidence that lawyers' comments taint civil trials and the courts' ability to protect confidential information"). *See also* American Bar Association, Model Rule 3.6 (Trial Publicity), cmt. 6 ("Another relevant factor in determining prejudice is the nature of the proceeding involved.  Criminal jury trials will be most sensitive to extrajudicial speech.  Civil trials may be less sensitive.  Non-jury hearings and arbitration proceedings may be even less affected.  The Rule will still place limitations on prejudicial comments in these cases, but the likelihood of prejudice may be different depending on the type of proceeding.").

establish that one of the investigating detectives took the drugs and money that the defendant stood accused of taking. *Id.* at 1063.

The Court's review of Gentile's sanctions produced a fractured decision, with Justice O'Connor joining parts of two separate opinions, each on behalf of four other Justices. *Id.* at 1032. Justice Kennedy announced the Court's first holding: Gentile's discipline was unconstitutional because the Nevada Bar rule was unconstitutionally vague. *Id.* at 1048. Vague regulations of speech, the Court explained, tend to suppress free expression "when either the speaker or the message is critical of those who enforce the law." *Id.* at 1051.

The Court went on to hold, in an opinion by Chief Justice Rehnquist, that attorneys can face discipline for out-of-court statements in principle, but only if their public comments are substantially likely to materially prejudice a trial. The Court acknowledged that discussing evidence that "might never be at admitted at trial" could threaten judicial proceedings, but it cautioned that "the criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system, and, if sufficiently informed about those happenings, might wish to make changes in the system." *Id.* at 1070. To balance these interests, the Court concluded that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard" than the traditional clear-and-present-danger test. *Id.* at 1074. Applying those principles, the Court determined that the rule was not unconstitutional on its face because it required a "substantial likelihood of material prejudice" in order to restrict attorney speech, which would satisfy strict scrutiny because any such finding would be "narrowly tailored" to "the substantial state interest in preventing prejudice to an adjudicative proceeding[.]" *Id.* at 1075–76.

Although *Gentile* set the general standard of scrutiny that applies to court restrictions

13

on attorney out-of-court speech, the Court's void-for-vagueness ruling left two issues unresolved. *First*, the Court did not consider the constitutionality of the aspect of the Nevada Bar rule that said certain categories of speech were "ordinarily [] likely" to be prejudicial. *Id.* at 1058 n.3; *see also id.* at 1076–81 (Rehnquist, C.J., dissenting) (arguing that the provision did not create presumptions but merely helped attorneys identify what statements may be problematic). *Second*, the Court did not consider whether the Nevada Bar's application of its rule to Gentile's press conference satisfied strict scrutiny.

Those two issues—the constitutionality of presuming prejudice and the application of the *Gentile* rule to specific facts—are dispositive here. As Mr. Horwitz will explain, well-established First Amendment principles make clear that he will likely prevail on each.

### 2. Rule 83.04(a)(2) Is Facially Unconstitutional

Rule 83.04(a)(2) is unconstitutional on its face. While subsection (a)(1) codifies *Gentile*'s "substantial likelihood of material prejudice" standard, subsection (a)(2) inverts First Amendment scrutiny by *presuming* that broad categories of attorney speech will prejudice proceedings and then burdening the speaker to prove that their comments are non-prejudicial. These features are antithetical to the First Amendment.

The Supreme Court has made abundantly clear—both before *Gentile* and since—that the Constitution "*demands*" that courts presume that restrictions on speech are invalid unless the government (or a party asking the government to censor speech) can prove that its desired gag order is both justified and narrowly tailored. *Ashcroft*, 542 U.S. at 660 (emphasis added). More than 60 years of precedent conclusively and repeatedly establishes this constitutional mandate. *See, e.g.*, *FEC v. Cruz*, 596 U.S. 289, 305 (2022) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 776 (2018) (same); *Citizens*

14

*United*, 558 U.S. at 340 (strict scrutiny places the burden of proof on the government); *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (plurality opinion) (same); *United States v. Alvarez*, 567 U.S. 709, 726 (2012) (plurality opinion) ("the Government's heavy burden … to regulate protected speech"); *Playboy*, 529 U.S. at 816 (same); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction."); *Reno v. ACLU*, 521 U.S. 844, 879 (1997) ("an especially heavy burden on the Government"); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("[T]he State bears the burden of justifying its restrictions[.]"); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983) ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it."); *Elrod v. Burns*, 427 U.S. 347, 362 (1976) ("[T]he burden is on the government to show the existence of such an interest."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (The state "must be able to show that its action was" justified.); *Freedman v. Maryland*, 380 U.S. 51, 58 (1965) (ruling that the burden of proof "must rest on the censor"); *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960) ("[T]he State may prevail only upon showing a subordinating interest which is compelling.'").

Where courts place the burden of proof is crucial, because the line between protected speech and that which can be censored is "finely drawn." *Playboy*, 529 U.S. at 817. With such fine margins, judicial presumptions are often "decisive of the outcome." *Speiser v. Randall*, 357 U.S. 513, 525 (1958). Misassigning the burden of proof "exacts an extraordinary cost" by silencing speech that influences, expresses, and tests our convictions and beliefs. *Playboy*, 529 U.S. at 817. In practice, presumptions of prejudice force a speaker to ask the Court for permission anytime they want to speak—an unconstitutional prior restraint on his speech that "bear[s] a heavy presumption against its constitutional validity."

15

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990).

Rule 83.04 gets the First Amendment analysis exactly backward—it reverses the presumption in favor of speech and "unfairly shift[s] the burden of proof" to the speaker. *Speiser*, 357 U.S. at 524. The rule absolves the moving party of their burden to prove prejudice from speech relating to things like the evidence involved or the character of the parties. Because the rule presumes certain categories of speech are unconstitutional, the Constitution presumes the rule is unconstitutional. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). As a result, Mr. Horwitz is likely to prevail on the merits of his facial claim.

### 3. The Middle District's Application of Rule 83.04 Violates the First Amendment

Mr. Horwitz is also likely to establish that the Middle District's application of Rule 83.04 is unconstitutional. The First Amendment prohibits restrictions on attorneys' out-of-court speech unless the proponent of a gag order produces real evidence that specific comments are substantially likely to materially prejudice proceedings—a standard that the Middle District does not apply. Nor does the Middle District apply the least restrictive means to protect proceedings, as illustrated by *Newby*'s blanket gag order.

As discussed in support of Mr. Horwitz's facial claim, *Gentile* confirmed that restrictions on attorney speech must satisfy strict scrutiny. *See* 501 U.S. at 1075–76 (identifying a "fundamental" and "substantial" interest supported by a "narrowly tailored" restraint). Since *Gentile*, the Court has reiterated that strict scrutiny requires that the party seeking to censor speech "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (plurality opinion) (placing the burden on the government to show "not merely that its

16

regulation will advance its interest, but also that it will do so 'to a material degree.'"). Courts must employ "careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit." *Carroll*, 393 U.S. at 181. And they must then impose the least restrictive means of censorship. *Playboy*, 529 U.S. at 813. The First Amendment's "tailoring requirement does not simply guard against an impermissible desire to censor," but also the government's attempts to censor speech "for mere convenience" when silencing speech "associated with particular problems" is "the path of least resistance." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014).

Applying those principles to attorneys' public speech yields the following general rules. General complaints of bad publicity are not enough to justify a speech restriction. The proponent must show that specific public remarks about evidence of questionable admissibility or a specific witness's credibility are likely to prejudice a jury in a way that would raise doubt about the reliability of a verdict. Then, before the court can restrict those specific remarks, the proponent must show that the court cannot fix the problem through voir dire or other means less restrictive than a gag order. If a gag order is the only means that will suffice, the court must not restrict more speech than necessary to prevent the specific risk of prejudice. For example, if the proponent shows that an attorney's remarks on the eve of trial about a specific witness undermines that witness's credibility, the Court must limit its relief to *those* comments—not all out-of-court speech.

A rule like Rule 83.04 can therefore satisfy the First Amendment only if the court requires the proponent of a gag order to produce real evidence (*see Edenfield*, 507 U.S. at 770–71) of a "specific, not general" harm, *United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987), and that the proposed restriction "will in fact alleviate [that harm] to a material degree." *Edenfield*, 507 U.S. at 771. The Court must then narrowly tailor relief by considering

"specific ... less burdensome alternatives" to a gag.  *See Ford*, 830 F.2d at 600.

The Sixth Circuit has applied these principles for half a century to court orders that broadly gagged attorneys and non-attorneys alike.  In *CBS Inc. v. Young*, a case over the Ohio National Guard's killing of unarmed students at Kent State, the district court entered a broad gag order prohibiting the parties, their attorneys, and their friends and relatives from discussing "in any manner whatsoever these cases with members of the news media or the public."  522 F.2d 234, 236 (6th Cir. 1975).  After CBS sought a writ of mandamus to lift the gag order, the Sixth Circuit ruled that a gag order could not stand without "a clear showing that an exercise of those first amendment rights will interfere with the rights of the government and the defendants for a fair trial."  *Id.* at 239.  To limit an attorney's public speech, the Court continued, "the record must contain sufficient specific findings by the trial court establishing that [the parties] and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.'"  *Id.*

Scrutinizing the gag order, the Sixth Circuit held that it was vague and overbroad: "According to its literal terms, no discussions whatever about the case are permitted by the persons upon whom the ban is placed whether prejudicial or innocuous, whether subjective or objective, whether reportorial or interpretive."  *Id.* at 239.  The Court then looked to the specific articles that inspired the gag order and found them to be "innocuous."  *Id.* at 240.  Without "substantial evidence" that the publicity posed a "clear and imminent danger" to the fair administration of justice, the Court held that the gag order violated the First Amendment.  *Id.* at 241–42.

A decade later, the Sixth Circuit considered another gag order, this time in the prosecution of Congressman Harold Ford.  *Ford*, 830 F.2d 596.  Again, the decision centered on the constitutional limits on the courts' authority to restrict speech outside the courtroom.

18

*Id.*  The Court reaffirmed that the First Amendment requires that "[t]rial judges, the government, the lawyers and the public must tolerate robust and at times acrimonious or even silly public debate about litigation[,]" because "courts  are public institutions funded with public revenues for the purpose of resolving public disputes, and the right of publicity concerning their operations goes to the heart of their function under our system of civil liberty."  *Id.* at 599.  Just because public discussion of a case "may result in overall publicity that is somewhat more favorable" than it would be otherwise does not make it "an 'unfair' trial for the government."  *Id.* at 600.  "To the extent that publicity is a disadvantage for the government," the Court reasoned, "the government must tolerate it.  The government is our servant, not our master."  *Id.*

Given the important public interests at stake, the Court ruled that the threat to a fair trial "must be specific, not general," to justify a gag order.  *Id.*  The gag order in the congressman's case failed because "no facts were found that would suggest 'a serious and imminent threat,' and the order was neither narrowly tailored nor directed to any specific situation."[7]  *Id.*  Moreover, the trial court failed to make "any specific consideration of the less burdensome alternatives of voir dire, sequestration or change of venue."  *Id.*

Similarly here, as shown by the *Newby* gag order, the Middle District's application of Rule 83.04 does satisfy strict scrutiny as articulated in *Gentile*, *CBS*, and *Ford*.  The public statements Mr. Horwitz would make about his cases against CoreCivic are as "innocuous" as those considered in *CBS*, 522 F.2d at 240.  It is not enough that his comments might lead to negative media coverage about CoreCivic.  *See Ford*, 830 F.2d at 600.

---

[7] Though *Gentile*—which did not concern a prior restraint—applied a somewhat lower burden of proof than the Sixth Circuit applied in *CBS* and *Ford*, it did not overrule those cases or the specificity of evidence the Sixth Circuit demands.  *See Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) ("[W]e are bound by Sixth Circuit precedent unless it is overruled by either our court sitting *en banc* or the Supreme Court.").

But because the Middle District applies Rule 83.04 so broadly, CoreCivic does not need to bother with evidence to silence Mr. Horwitz. *See Newby*, Ex. 1 at 5 (holding evidence is unnecessary because of Rule 83.04(a)(2)(A), (D)). Given the slow pace of civil litigation and CoreCivic's propensity for settling claims that risk reaching trial, there is rarely even an impending trial to prejudice. Mr. Horwitz's comments to the local media and his social-media posts are never likely to poison a jury pool comprised of well over 1.5 million people spread across 14 counties in the greater Nashville region, either. There has never been any evidence that Mr. Horwitz's public comments would materially prejudice some far-off trial, nor that an absolute gag order under threat of contempt is the narrowest way to address concerns of juror prejudice.

The First Amendment demands more before the judiciary can restrict public speech. *See Karhani v. Meijer*, 270 F. Supp. 2d 926, 933–34 (E.D. Mich. 2003) ("The distribution of leaflets by Plaintiffs does not pose a serious and imminent threat. The litigation is in its infancy; it is doubtful that the leaflets, at least during the present time period, will have any lasting [e]ffect on the jury pool for a trial that is many months in the future. Furthermore, while the case has generated media publicity—newspaper articles, and television and radio discussions—the sporadic nature of the coverage does not at this time appear to pose a risk to the jury pool. If leafleting and media reports continue, then the Court will assess its options as the case draws closer to trial." (footnote omitted)). The court's willingness to restrict speech absent any evidence whatsoever shows that the rule's inverted burden of proof is outcome-determinative and chills speech—just as the Supreme Court warned in *Playboy*, 529 U.S. at 817, and *Speiser*, 357 U.S. at 525.

Moreover, the Middle District's application does not satisfy the First Amendment's tailoring requirements. *See Carroll*, 393 U.S. at 184 (requiring specific, less-restrictive

20

alternatives that fit "the exact needs of the case"). Indeed, in issuing the *Newby* gag order, Magistrate Judge Frensley declared that it simply did not matter if the case was "unlikely to go to trial, and that voir dire c[ould] ensure a neutral jury in the event of a trial[.]" Ex. 1 at 7. Gag orders, however, must be the last resort. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976) (emphasizing the "questioning of prospective jurors … to screen out those with fixed opinions" as a preferred alternative to a full-fledged prior restraint); *Ford*, 830 F.2d at 598–99 (suggesting "a change of venue or the sequestration of the jury or a [] voir dire examination of the jury," rather than an outright gag-order) (citing *CBS,* 522 F.2d at 241)); *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) ("Means narrower than Rule 7-107 are available to assure confidentiality in proper cases. Orders protecting trade secrets, other confidential information, and the privacy of individuals are not unusual." (citing *CBS*, 522 F.2d 234)); *Karhani*, 270 F. Supp. 2d at 934 ("[P]otential prejudice to the jury pool can be evaluated by vigorous voir dire.").

In summary, the First Amendment requires that Mr. Horwitz be free to discuss his cases publicly unless the proponent of a gag order produces real evidence that a restriction is necessary because specific things he said are substantially likely to materially prejudice an impending trial *and* that the gag order is necessary. Mr. Horwitz is likely to show that the Middle District's application of Rule 83.04 to his speech does not satisfy this standard.

### 4. Rule 83.04 Is Void for Vagueness

Mr. Horwitz is also likely to show that Rule 83.04 is void for vagueness. A rule is unconstitutionally vague "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A "person of ordinary intelligence" must be able to reasonably understand exactly what a law prohibits, "so that he may act accordingly." *Id.* Otherwise, the vagueness of a rule "delegates basic policy matters to policemen, judges, and

juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108–09. This problem is compounded when a vague law inhibits free speech. *Id.* The uncertainty over a rule's limits inevitably causes otherwise willing speakers to "steer far wider of the unlawful zone … than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372–73 (1964) (cleaned up). And that problem is particularly damaging when a rule is directed at a profession whose "mission" is "challeng[ing] actions of the State," like public-interest lawyers. *Gentile*, 501 U.S. at 1051.

As discussed above, vagueness doomed the Nevada Bar's restriction on attorney speech in *Gentile*, 501 U.S. at 1048–51. The rule in *Gentile* had a safe-harbor provision that allowed attorneys to describe the "general nature of the defense without elaboration." *Id.* at 1048 (cleaned up). These terms were insufficiently precise, the Court ruled, because they left a lawyer guessing at the safe harbor's contours: "The right to explain the 'general' nature of the defense without 'elaboration' provides insufficient guidance because 'general' and 'elaboration' are both classic terms of degree." *Id.* at 1048–49.

Likewise, other courts' gag rules have been struck down as impermissibly vague. *See CBS*, 522 F.2d at 239 (holding that the rule's application to "relatives, close friends and associates" was impermissibly vague because no one could be sure who exactly the order captured); *see also Hirschkop*, 549 F.2d at 370–71 (prohibition on statements about "other matters that are reasonably likely to interfere with a fair trial" was "so imprecise that it can be a trap for the unwary"); *Chi. Council of Laws. v. Bauer*, 522 F.2d 242, 255–56 (7th Cir. 1975) ("There is … a serious vagueness problem associated with the phrase 'other matters' employed in DR 7-107(D).").

22

Rule 83.04 is also vague. It's virtually impossible for Mr. Horwitz—a practicing First Amendment lawyer—to guess what level of factual detail he's allowed to share with the public about the "[e]vidence regarding the occurrence or transaction involved" in his cases before it comes under Rule 83.04(a)(2)(A)'s proscription. Surely he can quote from the complaint, a public document. But how much paraphrasing or editorializing does Rule 83.04 allow? It's unclear. Similarly, Mr. Horwitz cannot guess which specific things he wants to say about CoreCivic could go to the "character" or "credibility" of the prison corporation under subsection (a)(2)(B). Indeed, it's not even clear that there can be "character" evidence about a corporation. It's also virtually impossible for Mr. Horwitz to guess what would fall under subsection (a)(2)(D)'s presumption against sharing "[i]nformation that … is likely to be inadmissible as evidence." Lots of things Mr. Horwitz would like to share publicly about CoreCivic might not be admissible in any given case. For instance, Mr. Horwitz's opinion of CoreCivic, his description of his past cases, and how the DOJ investigation into Trousdale Turner is relevant to his cases might all be "inadmissible as evidence." But he can't be sure based on the vague and overbroad text of Middle District's rule.

As a result of Rule 83.04's broad and imprecise language and Mr. Horwitz's legitimate fear of sanctions by this Court, Mr. Horwitz must restrict his discussion of his clients' cases against CoreCivic. His reasonable uncertainty about what speech the rule allows forces Mr. Horwitz to err on the side of silence and chill his otherwise legitimate speech. This injury is exactly what the vagueness doctrine is meant to prevent. *See Baggett*, 377 U.S. at 372–73. Mr. Horwitz is likely to success on his vagueness challenge, as well.

## B. The Remaining *Winter* Factors Favor a Preliminary Injunction

Mr. Horwitz satisfies the remaining *Winter* factors given the ongoing injury to his First Amendment rights. Rule 83.04 chills Mr. Horwitz's speech, thereby "exact[ing] an

23

extraordinary cost." *Playboy*, 529 U.S. at 817. The rule, on its face and as applied, has prevented Mr. Horwitz from zealously advocating for his clients in public. This violation of his fundamental rights is irreparable. Both the equities and the public interest support an injunction alleviating that harm until this case is resolved. *See Sisters for Life*, 56 F.4th at 408; *G & V Lounge*, 23 F.3d at 1079.

### C. No Bond Is Necessary

Federal Rule of Civil Procedure 65(c) provides that a court imposing a preliminary injunction should set a bond in an amount to secure the defendant against the costs of complying with a wrongly issued injunction. In the Sixth Circuit, a district court may choose to waive the bond altogether. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Mr. Horwitz respectfully requests that this Court either waive the bond requirement or set it at a nominal amount given that there has never been any evidence that Mr. Horwitz's out-of-court speech jeopardizes the fairness of his trials. Nor is there a material risk that the Middle District incurs any additional costs in applying strict scrutiny to Mr. Horwitz's out-of-court speech given that none of his cases against CoreCivic have ever made it to trial.

CONCLUSION

This Court should grant Mr. Horwitz's motion to preliminarily enjoin the Middle District and its judges from applying Rule 83.04 unless a party-opponent produces real evidence that a specific thing Mr. Horwitz has said is substantially likely to materially prejudice proceedings *and* that no less-restrictive means would prevent that prejudice.

24

Dated: November 1, 2024

Respectfully,

/s/ Jared McClain

Braden H. Boucek
Tenn. BPR No. 021399
Ga. Bar No. 396831
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Ste. 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org

Jared McClain
Benjamin A. Field
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, Virginia 22203
(703) 682-9320
jmcclain@ij.org
bfield@ij.org

*Counsel for Plaintiff Daniel A. Horwitz*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of this Court, served on the below-named defendants, and served on the U.S. Attorney General and on the U.S. Attorney by U.S. certified mail:

U.S. District Court for the Middle District of Tennessee
c/o Clerk of Court Lynda M. Hill
Fred D. Thompson U.S. Courthouse and Federal Building
719 Church Street, Suite 1300
Nashville, TN 37203

Hon. William L. Campbell, Jr.
Chief District Judge
Fred D. Thompson U.S. Courthouse and Federal Building
719 Church Street
Chambers, Suite 6425
Nashville, TN 37203

Hon. Aleta A. Trauger
District Judge
Fred D. Thompson U.S. Courthouse and Federal Building
719 Church Street
Chambers, Suite 6325
Nashville, TN 37203

Henry Leventis
U.S. Attorney for the
Middle District of Tennessee
719 Church Street, Suite 3300
Nashville, TN 37203

Hon. Waverly D. Crenshaw, Jr.
District Judge
Fred D. Thompson U.S. Courthouse and Federal Building
719 Church Street
Chambers, Suite 5125
Nashville, TN 37203

Hon. Eli Richardson
District Judge
Fred D. Thompson U.S. Courthouse and Federal Building
719 Church Street
Chambers, Suite 5325
Nashville, TN 37203

Merrick Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

/s/ Jared McClain
Jared McClain

26