# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DANIEL A. HORWITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:24-cv-1180 |
| v. | ) |
| | ) |
| U.S. DISTRICT COURT FOR THE | ) |
| MIDDLE DISTRICT OF TENNESSEE, *et al.* | ) |
| | ) |
| Defendants. | ) |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER & RENEWED MOTION FOR PRELIMINARY INJUNCTION (ECF 21)

_____

# INTRODUCTION

Daniel Horwitz's public speech about his litigation in the Middle District of Tennessee has been unduly restricted since July 2022, when the court granted a motion by CoreCivic to gag Mr. Horwitz pursuant to Local Rule 83.04.[1] In that gag order, the court applied Rule 83.04 as written—which is to say, in violation of the First Amendment. Rule 83.04(a)(2), by its plain text, creates a presumption that most things an attorney could say about his cases are materially prejudicial and, thus, forbidden.[2] That same subsection also places the burden on the speaker to prove his speech is not harmful. These two features of Subsection (a)(2) violate the First Amendment and volumes of Supreme Court precedent.

Ever since the court in *Newby v. CoreCivic* warned Mr. Horwitz that he could be held in contempt if he violated Rule 83.04 again, Mr. Horwitz has been litigating under the constant threat of further enforcement under the rule. That entire time, he has been engaged in litigation against CoreCivic, a company which has shown it will invoke Rule 83.04 if Mr. Horwitz talks to the media about his cases. So, to vindicate his right to speak, Mr. Horwitz has tried persistently to obtain a ruling from the Middle District that clarifies the extent to which Rule 83.04 can operate consistently with the First Amendment. He appealed the original gag order and then filed motions in four other cases. When none of that worked, he filed this lawsuit as a last resort.

Shortly thereafter, Mr. Horwitz filed a motion for preliminary injunction with this Court on November 1, 2024. ECF 21. He explained in his motion that, given the plain text

---

[1] *Newby v. CoreCivic of Tenn., LLC*, No. 22-cv-00093, ECF 53 (a copy of the opinion and order is attached as Ex. A to the preliminary-injunction motion, ECF 21-3).

[2] Subsection (a)(2) enumerates four comprehensive categories of speech: The first covers comments on things that might be evidence in the case while the fourth covers things that cannot be evidence in the case. The second covers the character and credibility of the parties and witnesses, and the third covers the results of tests and examinations.

1

of Rule 83.04, how the Middle District has applied it, and CoreCivic's eagerness to invoke it, Mr. Horwitz has been forced to forgo extensive opportunities for public commentary about his litigation—including press releases, social-media posts, and interviews with the press—rather than risk sanctions or a finding of contempt. Specifically, the rule's unconstitutional presumption of prejudice and burden-shifting provision and its overly broad and vague categories of content restrictions are forcing Mr. Horwitz to err on the side of silence and chilling his otherwise legitimate speech about his cases against CoreCivic.

The government is currently due to file its opposition to the motion for preliminary injunction on December 27. *See* ECF 27.

Unfortunately, the ongoing injury to Mr. Horwitz's constitutional rights suddenly became more acute while the motion for preliminary injunction has been pending. CBS News contacted Mr. Horwitz on Friday, December 13, requesting an interview sometime this week about Mr. Horwitz's work litigating against CoreCivic. *See* Ex. A (a copy of the e-mail request). Mr. Horwitz would like to participate in that interview and share his clients' stories, as the First Amendment ensures his right to do. Horwitz TRO Decl. ¶¶ 4–5. He would also like to participate in any other interviews that come up during the pendency of his motion for preliminary injunction, requests which are likely to increase as a new Deputy Attorney General and U.S. Attorney take over the Department of Justice's investigation of Trousdale Turner. *Id.* ¶¶ 9–10. But Mr. Horwitz cannot do so because any interview he gives about CoreCivic is likely to touch on the very categories of content proscribed by Local Rule 83.04: namely, the evidence in his cases, things that could not be admitted as evidence in his cases, and the character and credibility of CoreCivic and its employees, some of whom could be witnesses in Mr. Horwitz's cases. *See* L.R. 83.04(a)(2)(A), (B), (D); *see also Tardy v. CoreCivic of Tennessee LLC*, No. 22-cv-00681, ECF 93, at 17 ("*Tardy* Response Br.") (CoreCivic arguing

2

Case 3:24-cv-01180    Document 30-1    Filed 12/18/24    Page 3 of 10 PageID #: 181

that Mr. Horwitz's opinions about CoreCivic count as "inadmissible opinion testimony"). Consequently, Mr. Horwitz had to decline participating in the interview until he obtained injunctive relief in this case. Horwitz TRO Decl. ¶¶ 8, 11–14.

Rule 83.04's presumption of prejudice and burden-shifting provision—plus CoreCivic's past reliance on those provisions to silence Mr. Horwitz—creates a credible fear that Mr. Horwitz's interviews with the media will embroil him in a legal process that forces him to prove the harmlessness of his remarks, under threat of sanctions. By its very structure, Rule 83.04(a)(2) is causing Mr. Horwitz imminent, concrete, and ongoing harm that requires this Court's intervention.

Accordingly, Mr. Horwitz urgently renews his request for a preliminary injunction. *See* ECF 21. If this Court would (understandably) prefer to wait for the benefit of the parties' full briefing on that motion, Mr. Horwitz asks the Court to enter a temporary restraining order without delay to preserve his rights until there is time to fully resolve the motion for preliminary injunction. A temporary order that restrains only Subsection (a)(2) of the rule—the provision that creates a presumption of prejudice and unconstitutionally shifts the burden to the speaker—would allow Mr. Horwitz to speak to the media about his cases against CoreCivic without fear that CoreCivic can invoke the rule without actual evidence of prejudice. *See Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) ("If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." (cleaned up)).

There's little reason to fear that, without Subsection (a)(2) in effect, Mr. Horwitz will prejudice his other cases or this Court's ability to ensure the fairness of those proceedings. Mr.

3

Horwitz will still be bound by Subsection (a)(1), which codifies the substantial-likelihood-of-material-prejudice test adopted in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). He is also bound by Rule 3.6 of the Tennessee Rules of Professional Conduct, which codifies the same standard. Enjoining Subsection (a)(2) would merely put the Middle District's trial-publicity rule on par with the Eastern District's rule and beyond that of the Western District, which does not have a trial-publicity rule. Indeed, Mr. Horwitz has been unable to find another federal court with a trial-publicity rule for civil cases like that includes a provision like Subsection (a)(2). *See also* Ex. B (examples of trial-publicity rules without unconstitutional presumptions and burden-shifting provisions). Most don't even have trial-publicity rules.

### A. Without a TRO, Mr. Horwitz will suffer further injury to his First Amendment rights.

Mr. Horwitz has been forced to forgo public comments on his cases against CoreCivic for over two years. But for Rule 83.04, Mr. Horwitz would immediately use traditional and social media to tell the public about *Shaw* and *Farrar*,[3] his active cases against CoreCivic in the Middle District—just like he had for other cases until the *Newby* gag order. *See* ECF 21-2 at ¶ 19 (Horwitz PI Decl.). He would also discuss those cases in interviews about the U.S. Department of Justice's investigation into Trousdale Turner. *Id.* ¶ 21. Mr. Horwitz's clients' stories, while not "widely publicized,"[4] are each a small part of the story of the rampant civil-

---

[3] *Shaw v. CoreCivic of Tenn., LLC*, No. 3:24-cv-0681 (filed June 4, 2024); *Farrar v. CoreCivic of Tenn., LLC*, No. 3:24-cv-1140 (filed Sept. 23, 2024).
[4] The government seems to think that injunctive relief is inappropriate because Rule 83.04(b) allows parties to seek a trial-publicity order in "Widely Publicized and Sensational Cases." That position is wrong for two main reasons. *First*, Mr. Horwitz's cases are not widely publicized, as civil-rights violations in CoreCivic's prisons are far too common for each to sustain much press attention on its own. *Second*, Subsection (b) authorizes even *more* restrictions on extrajudicial speech in widely publicized cases—not less. Specifically, the rule

4

rights abuses in that prison. And Mr. Horwitz has the right to share his clients' stories with the public, so that the electorate can understand how CoreCivic carries out the State of Tennessee's governmental functions.

But Mr. Horwitz cannot speak freely about his litigation against CoreCivic because the private-prison company has already invoked Rule 83.04 against him and demonstrated that it will do so again each time Mr. Horwitz publicizes his cases or asks the court to permit him to do so. Indeed, when asked to comment on this very lawsuit, "CoreCivic said the organization was aware of the litigation, and their 'position regarding the local rules of court involving litigation brought against us has not changed.'"[5] CoreCivic's position is that Mr. Horwitz's "repeated public statements about the *Newby* case violated Local Rule 83.04, and

---

authorizes the Middle District to extend Rule 83.04 to "parties and witnesses" instead of just attorneys. Indeed, Mr. Horwitz has already tried to rely on Subsection (b) and found no recourse for those very reasons. In the *Newby* gag order, Magistrate Judge Frensley held as follows:

> The Court does not find that the present case is currently "widely publicized and sensational," despite Mr. Horwitz's efforts to make it so. The Court interprets this exception to apply to cases where the parties and attorneys have to respond to high levels of uninvited media pressure and influence, rather than being designed to allow attorneys to encourage media attention and public outcry prior to trial. A special order pursuant to L.R. 83.04(b), as requested by Plaintiff's Motion (Docket No. 41) is therefore not appropriate in this case.

ECF 21-3, at 6.

[5] Angele Latham, *Nashville attorney fights court gag order for CoreCivic social media posts around lawsuits*, The Tennessean (Oct. 1, 2024), *available at* https://bit.ly/3YxSaB6; *see also* Brandon Lowrey, *Battle Over Atty Speech Raises First Amendment Concerns*, Law360 (Dec. 16, 2024) ("CoreCivic spokesperson Ryan Gustin told Law360 that the company stands by Judge Frensley's decision, saying it 'supports our belief that matters of litigation should be decided within the court system and not in the press or social media.'") (A paywalled version of this article is *available at* https://bit.ly/3DlUKmF, and a hard copy is attached to this motion as Exhibit C).

allowing him to tweet in a similar fashion about [other] case[s] would do the same." *Tardy* Response Br. 15-16.

The ongoing threat of enforcement creates a here-and-now injury to Mr. Horwitz's First Amendment rights. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330-31 (6th Cir. 2013) (threat of enforcement proscribes the plaintiffs' speech, creating injury in fact). That threat is exacerbated by the fact that CoreCivic has invoked Rule 83.04 against Mr. Horwitz in similar circumstances. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (past enforcement is "good evidence that the threat of enforcement is not chimerical" (cleaned up)). And by the fact that CoreCivic maintains the power to initiate enforcement proceedings again. *See McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (considering "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"); *see also Online Merchants Guild v. Cameron*, 995 F.3d 540, 550-52 (6th Cir. 2021) (assessing the *McKay* factors, all of which are present here).

Mr. Horwitz does not need to expose himself to enforcement proceedings to find out whether his speech will subject him to sanctions. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974). He is not free to speak if doing so will force him to defend himself in a legal process in which he must prove a negative. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) (being subjected to a legal process is "a real consequence that objectively chills speech").

Mr. Horwitz's speech has been unconstitutionally proscribed for years already, when even a "minimal period[] of time" was enough to irreparably injure his rights. *See Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 408 (6th Cir. 2022). Without this

Court's intervention, Mr. Horwitz will have to pass on yet another opportunity to discuss his clients' cases against CoreCivic—this time with a national audience.

### B. Subsection (a)(2) is facially unconstitutional.

Given the imminent and concrete injury that Mr. Horwitz must endure until this Court intervenes, a temporary restraining order is appropriate. The merits of Subsection (a)(2) are hardly in doubt. As Mr. Horwitz explained in support of his motion for preliminary injunction, the Supreme Court has held for generations that the First Amendment "*demands*" that courts presume that speech is constitutional and that restrictions on speech are not. *See Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) (emphasis added); *see also FEC v. Cruz*, 596 U.S. 289, 305 (2022) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 776 (2018) (same); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (strict scrutiny places the burden of proof on the government); *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (plurality opinion) (same); *United States v. Alvarez*, 567 U.S. 709, 726 (2012) (plurality opinion) ("the Government's heavy burden … to regulate protected speech"); *United States v. Playboy Enter. Grp., Inc.*, 529 U.S. 803, 816 (2000) (same); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction."); *Reno v. ACLU*, 521 U.S. 844, 879 (1997) ("an especially heavy burden on the Government"); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("[T]he State bears the burden of justifying its restrictions[.]"); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983) ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it."); *Elrod v. Burns*, 427 U.S. 347, 362 (1976) ("[T]he burden is on the government to show the existence of such an interest."); *Tinker v. Des Moines Indep.*

7

*Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (The state "must be able to show that its action was" justified.); *Freedman v. Maryland*, 380 U.S. 51, 58 (1965) (ruling that the burden of proof "must rest on the censor"); *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960) ("[T]he State may prevail only upon showing a subordinating interest which is compelling.'").

Rule 83.04(a)(2) flips this constitutional presumption on its head. By placing the burden on Mr. Horwitz to prove the lack of prejudice, Rule 83.04(a)(2) upsets the "finely drawn" balance between protected speech and that which courts can censor. *See Playboy*, 529 U.S. at 817. As a result, Subsection (a)(2) continue to "exact[] an extraordinary cost" on Mr. Horwitz. *See id*. Both the equities and the public interest support an injunction alleviating that cost until this case is resolved. *See Sisters for Life*, 56 F.4th at 409; *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

## CONCLUSION

This Court should grant Mr. Horwitz's motion to preliminarily enjoin the Middle District and its judges from applying Rule 83.04 to restrict Mr. Horwitz's out-of-court speech unless a party-opponent produces real evidence that a specific thing Mr. Horwitz said is substantially likely to materially prejudice proceedings *and* that no less-restrictive means would prevent that prejudice. In the meantime, this Court should temporarily enjoin the Middle District's enforcement of Local Rule 83.04(a)(2) as to Mr. Horwitz pending the resolution of the motion for preliminary injunction.[6]

Dated: December 18, 2024.

---

[6] To the extent the federal rules require notice to Defendants beyond service of this motion through CM/ECF, lead counsel for Mr. Horwitz certifies that he gave notice of Mr. Horwitz's intent to file this motion by email to the government's counsel, after attempting to reach an agreement that would avoid the need for a temporary restraining order. *See* Fed. R. Civ. P. 65(b)(1)(B); McClain Decl. at ¶¶ 4–8.

Respectfully,

/s/ *Jared McClain*

| | |
|---|---|
| Braden H. Boucek | Jared McClain |
| Tenn. BPR No. 021399 | Benjamin A. Field |
| Ga. Bar No. 396831 | INSTITUTE FOR JUSTICE |
| SOUTHEASTERN LEGAL FOUNDATION | 901 N. Glebe Rd., Ste. 900 |
| 560 W. Crossville Road, Ste. 104 | Arlington, Virginia 22203 |
| Roswell, GA 30075 | (703) 682-9320 |
| (770) 977-2131 | jmcclain@ij.org |
| bboucek@southeasternlegal.org | bfield@ij.org |

*Counsel for Plaintiff Daniel A. Horwitz*